432 P.2d 456

**The STATE of Arizona, Appellee,**

**v.**

**Rosalio B. MONTEZ, Appellant.**

**No. 1662.**

Supreme Court of Arizona.

In Banc.

Oct. 5, 1967.

Darrell F. Smith, Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for appellee.

Tom Karas, Federal Defender, Phoenix, for appellant.

STRUCKMEYER, Justice.

Rosalio B. Montez, then being represented by appointed counsel, was, after trial, found guilty in August, 1959, of four charges of robbery and one of attempted robbery. The evidence at the trial established that he had severely pistol-whipped his victims in an effort to intimidate them, and that he had a criminal record which included a felony conviction. He was sentenced on

the 31st day of August, 1959, to not less than twenty-five nor more than thirty years in the state penitentiary.

Arizona has, from statehood, provided counsel to represent indigent defendants both for trial and on appeal, A.R.S. § 13–1721, and the expenses of the record on appeal are a county charge, A.R.S. § 13–1714. While awaiting sentence in the county jail, Montez wrote this letter to his attorney, Charles Filler:

"August 24th 1959

"Dear Chuck:

I put in a tank order to see you and I told the probation officer to call you and have you come up. I realize you have other business to attend to, but it is important that I see you as soon as you receive this letter. *I am asking you to file a motion for an appeal in my case.* I also want a stay of execution. This is extremely urgent and I want to see you right away. I want to discuss this with you before the statute of limitations expires. I'll expect you Tuesday sometime. I want to thank you for your effort which you put into this case, *but I'm not through fighting* Chuck. I'll be expecting you. Play it cool!!

Respectfully yours
Boqui"

(First emphasis supplied.)

It is clear that on the day of this letter Montez wanted his attorney to appeal.

In February 1966, Filler testified at a hearing in the United States District Court for the District of Arizona on a habeas corpus application Montez had filed:

"Q Did you have occasion to communicate with the petitioner between the time of the trial itself, between the time the trial itself ended and the time set for sentencing?

"A I believe I saw him in the County Jail at least once and possibly twice.

\* \* \* \* \*

"Q Do you recall generally or specifically anything concerning what was said or what was discussed at these conversations?

\* \* \* \* \*

"Q Between the verdict and the sentencing.

"A I remember some of the subject matter that was discussed.

"Q What was that?

"A Well, among other things, we discussed an appeal."

Filler was unable to remember at the time of the District Court hearing "either verbatim the words of our discussion or the substance of it concerning this appeal." He further testified:

"A I don't think I answered your Honor's last question as to whether I refused to prosecute an appeal, and, your Honor, I simply cannot remember at this time why I did not appeal the matter. I know we discussed it. I have no recollection as to whether I refused or whether we agreed that it would be of little value. *I cannot remember."* (Emphasis supplied.)

But we think it is of no moment whether Filler personally refused to prosecute an appeal or whether it was agreed that an appeal would be of little value. The decision not to appeal was conveyed to Montez and accepted by him. He testified at the hearing:

"Q And it is correct that you made no effort within the first few months, or in fact within even a year, let's say, to contact him [his trial lawyer] concerning your appeal? In other words, after you left the sentencing area, your impression at the time, until sometime later, was that there was going to be no appeal, for whatever reason?

"A That's correct."

Filler and Montez remained on the friendliest of relations. The first letter sent by Montez at the state penitentiary to Filler was on November 29, 1960. Montez wrote in this fashion:

"Hi Chuck:

"Since my arrival here at state prison, I have been saving and finally compiled what I believe to be sufficient material

to delve into a task for which I have anxiously waited for. Material which I obtained from the West Publishing Company in St. Paul, Minn. and Washington, D. C.

"In doing so, and since I am acting pro. se. in my initial preparation I need some information which I understand I can get from you. And that is; a copy of the minute entry, and my Superior Court Criminal Case number. I would appreciate it very much if you would send these to me at your earliest convenience, along with any material you might think necessary in assisting me in my preparation.

"I have been here fifteen months already. Maybe the lapse of time might help in tempering the fermentation caused by a senseless idiot.

"In wishing you had a very pleasant Thanksgiving and hoping you and your family are in excellent health, I remain,
"Very Respectfully
Boqui"

We note that Montez did not berate his attorney for failing to take an appeal or the failure to have other counsel appointed who would take an appeal. Neither did Montez apply in this court or the court below for the appointment of other counsel or for a change in counsel. We, therefore, can only conclude that he accepted and acquiesced in his counsel's decision not to appeal.

Thereafter, in January of 1961, Montez, in propria persona, filed a petition for writ of habeas corpus in this Court. This petition for some unknown reason was mislaid. Montez was duly advised of this and he filed another petition for a writ of habeas corpus on November 16, 1961. As partial grounds for the writ he asserted, "That petitioner's court appointed lawyer was, in this instance, incompetent, unconcerned or/and unfaithful," and in support of this allegation, stated:

"That counsel for the defendant took little interest in this case and acted more as a 'friend of the court' than an advocate for the defendant. He failed to call witnesses involved in this matter who he knew and the record will show had testified favorably during the preliminary hearing. On several occasions prior, during and after the trial, your petitioner's court appointed lawyer lied to your petitioner to the extent of placing him on the witness stand without warning, asking nor briefing him in this matter. After the trial, the lawyer appointed by the court to represent your petitioner, refused to see your petitioner and made himself only available during the time for sentencing at which time he said nothing.

"Without mentioning the words 'public defender' it should be obvious that any lawyer assigned in an indigent's case, must act as an advocate who is willing to properly advise and protect, or the indigent has been denied due process or equal protection of the law, which are guaranteed constitutional rights, with the state being required to grant the indigent redress, because the state when it assigned the lawyer, accepted the responsibility of seeing to it that the lawyer properly performed his duty."

It is clear that Montez was complaining in this Court of the inadequacy of Filler as trial counsel. There is not the slightest suggestion that against his continued express demand Filler refused to take an appeal.

Four years later, on February 25, 1965, Montez filed another application for writ of habeas corpus with this Court in which his only assertion was the denial of equal rights to the privilege of habeas corpus because of the loss of his application of January, 1961. This last application, since it obviously stated no grounds which would justify habeas corpus, was treated pursuant to the policy of this Court as an application for a delayed appeal under Rule 16(a), Rules of the Supreme Court, 17 A.R.S., and, as such, denied. The denial was for the reason that the application suggested no reason which would justify the failure

to promptly and expeditiously appeal from the judgment of conviction.

Montez then applied, as stated, for a writ of habeas corpus to the United States District Court for the District of Arizona which, after a hearing, denied his application. He then appealed to the Ninth Circuit Court. On appeal, that Court reversed, expressing the view:

"While we recognize that there is some evidence and inferences to be drawn therefrom in support of the findings of the District Court that appellant knowingly waived his right to appeal, nevertheless, after reviewing the entire records, we are left with the definite and firm conviction that a mistake has been committed, and that the finding of the District Court is clearly erroneous." Montez v. Eyman, 372 F.2d 100.

The Circuit Court also stated that it was

"reluctant to pass on the merits of appellant's contentions without giving the Supreme Court of Arizona the first opportunity to determine whether appellant was denied due process and a fair trial in the state court proceedings." Ibid.

Since the Circuit Court gave no reason for its firm conviction that a mistake had been made, we directed the Attorney General of this state to move that the last application filed in this Court be re-examined. We appointed Tom Karas, the Federal Defender who represented Montez in the Circuit Court, as his counsel in this Court.

We have again reviewed this matter. We are not of the view that Montez was denied due process of law on the ground he was denied the effective assistance of counsel. Montez knew he had the right to counsel if he wished to appeal. He apparently accepted the advice of his trial counsel not to appeal and never, at any time over a period of six years, 1959 through 1965 did he urge or even suggest in this Court that his trial counsel refused to undertake an appeal over his specific request.

■ In Arizona habeas corpus is a civil remedy. It may not be used to collaterally attack a judgment of conviction where the claimed errors do not involve a loss of jurisdiction by a court because of a denial of constitutional rights under either the federal or state constitutions. Most certainly it is not a substitute for an appeal. State v. Kruchten, 101 Ariz. 186, 417 P.2d 510, cert. denied 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687; Application of Oppenheimer, 95 Ariz. 292, 389 P.2d 696, cert. denied 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311.

■ As for appeals, we require that errors in criminal proceedings be timely raised so that the State may have the opportunity to produce the evidence necessary for a meaningful prosecution if a retrial is necessitated. State ex rel. Murphy v. Superior Court In and For Pinal County, 25 Ariz. 226, 215 P. 538. We do consider an appeal timely under Rule 16(a), Rules of the Supreme Court, supra, if a defendant has failed to take the customary appeal within sixty days because of circumstances or events beyond his control.

■ We hold that, as in this case, a convicted felon may acquiesce in the advice and decision of counsel not to appeal, so as to make that decision his. We will not recognize the claim that the decision of counsel in which he acquiesced deprived him of the right to counsel within the meaning of the Sixth Amendment to the Constitution of the United States so as to permit a collateral attack on the judgment of conviction by habeas corpus or to permit it to be asserted as the basis of good cause for a delayed appeal.

The petition for habeas corpus which this Court heretofore treated as an application for delayed appeal is again denied.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.