**Rosalio B. MONTEZ, Petitioner,**

v.

**Frank A. EYMAN, Warden, Arizona State Prison, Respondent.**

**No. Civ. 5889.**

United States District Court
D. Arizona.

Nov. 16, 1967.

Tom Karas, Federal Defender, Phoenix, Ariz., for plaintiff.

Darrell F. Smith, Atty. Gen., Phoenix, Ariz., for respondent.

## OPINION UPON MOTION FOR RECONSIDERATION OF PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

CRAIG, District Judge.

Petitioner is in state custody, serving a prison sentence imposed August 31, 1959, by the Superior Court of the State of Arizona, upon conviction by a jury on four counts of robbery and one count of attempted robbery. No appeal from the judgment of conviction was taken.

On February 24, 1966, petitioner was permitted to file in forma pauperis an application for writ of habeas corpus in this Court.

On March 21, 1966, this Court entered its order denying petitioner's application, and granted petitioner leave to appeal.

Petitioner appealed to the United States Court of Appeals for the Ninth Circuit. The latter Court reversed and remanded for further proceedings. Montez v. Eyman, 372 F.2d 100. In remanding the case, the Court of Appeals stated:

"* * * The cause is remanded to the District Court with instructions to hold the proceedings in abeyance for such reasonable period of time as the District Court may determine in order to afford appellant an opportunity to move the Supreme Court of Arizona for a delayed appeal, and if such motion be filed, for such additional period of time as may be required to afford the Supreme Court of Arizona an opportunity to act upon such motion and, if granted, to determine the merits of appellant's delayed appeal. If appellant fails to file such motion, or if such motion be filed and denied, or if granted and the decision of the Supreme Court of Arizona on the delayed appeal is unfavorable to the appellant, then on the happening of any of said events the District Court shall reconsider the appellant's petition in light of the views expressed by the Supreme Court of the United States in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). If the decision of the Supreme Court of Arizona grants to appellant a new trial, the proceedings before the District Court should be dismissed as moot."

This Court, upon receipt of the certified copy of judgment from the Court of Appeals, remanded the case to the jurisdiction of the State of Arizona for further proceedings, consistent with the judgment of the Court of Appeals.

On February 28, 1967, the Supreme Court of Arizona directed the Attorney General of the State of Arizona to move the Court for further consideration of the cause in light of the decision of the Court of Appeals of the Ninth Circuit dated

February 7, 1967. On March 6, 1967, the Attorney General filed his motion for further consideration with the Supreme Court of Arizona.

Tom Karas, Esquire, the court appointed counsel who prosecuted the appeal to the Court of Appeals of the Ninth Circuit, was appointed to represent petitioner before the Supreme Court of Arizona. Mr. Karas joined the Attorney General in moving the Supreme Court of Arizona for further consideration.

On May 2, 1967, in response to the motion of the Attorney General, and Mr. Karas on behalf of petitioner, the Supreme Court of Arizona ordered, the entire record, including the reporter's transcript of evidence be forwarded to the Supreme Court of Arizona within fifteen days from the date of said order.

After a review of the entire record, the Supreme Court of Arizona, on October 5, 1967, in a unanimous opinion upon petitioner's application for writ of habeas corpus, treated by the Supreme Court as an application for delayed appeal, again denied the petitioner's application. State of Arizona v. Montez, No. 1662, October 5, 1967, 102 Ariz. 444, 432 P.2d 456.

Thereafter on October 23, 1967, petitioner filed his motion for reconsideration of the application for writ of habeas corpus. The matter was argued and submitted to the Court.

This Court has reviewed the record in the Superior Court of the State of Arizona for the County of Maricopa, including the reporter's transcript at the trial of petitioner, as well as the transcript of the proceedings upon the first hearing of petitioner's application on March 15, 1966.

From the record in this case it appears that petitioner was, on August 12–20, 1959, tried before a jury on information filed by the County Attorney of Maricopa County, Arizona, which information consisted of five counts of robbery and one count of attempted robbery. At the conclusion of the trial the jury returned a verdict of guilty on four robbery counts and the attempted robbery count, and a verdict of not guilty on one of the robbery counts. Petitioner, at the time of trial, was represented by Court appointed counsel, Charles A. Filler, Esquire.

A review of the record in this case discloses that, throughout the course of the trial, counsel for petitioner exhaustively cross-examined each witness called by the State with particular emphasis on the issue of identification of petitioner in the course of the several robberies and the attempted robbery. In four of the robberies the victims were severely pistol-whipped by the assailant. In the attempted robbery, one of the victims was either pistol-whipped or shot.

In attacking the validity of identification of the petitioner through fingerprints taken by the identification officer of the Phoenix Police Department, counsel for the defendant, on cross-examination, made the following inquiry with respect to the identification card forwarded to the Federal Bureau of Investigation:

"Q Would you tell me what specifically you did with regard to this?

A Well, I took his fingerprints, had him sign it, then I signed it. I had him sign it first then took his fingerprints on it, and I signed my signature and the date is on there.

Q In other words, the only thing that you did here is actually apply the fingers to the pad and take the prints, plus signing it and having him sign it, is that right?

A That's right.

Q In other words, the rest of it was done by someone else, is that correct?

A Just the information I had there was done by the typist.

Q All the typing?

A No, I typed the majority of the material on that.

Q I want to know what you put on there.

A I put all the typing on there because he had a previous record. If he hadn't had a previous record—

MR. FILLER: If the Court please, I would like to approach the bench." (Tr. 286–287)

At this point counsel moved for a mistrial. The Court denied the motion for mistrial, and instructed the jury as follows:

"THE COURT: At this time the jury is instructed to disregard the last remark of the witness. Treat it as though you had never heard of it." (Tr. 288)

It is suggested that this elicitation constituted error upon which petitioner might have had grounds for appeal. It is interesting to note that subsequently the defendant took the stand on his own behalf, and upon elicitation by his counsel admitted his prior criminal record. It is also interesting to note that when the case was submitted to the jury twelve forms of verdict were submitted, two on each count. The jury returned a verdict of not guilty on one count. A review of the record with respect to the evidence submitted on that count discloses that there was some question as to the accuracy of the identification. It would appear obvious that the jury was not impressed with the state's evidence with respect to that count.

Subsequent to the conviction on August 20, 1959, and while in state custody awaiting sentence, petitioner wrote the following letter to his counsel:

"August 24th 1959

"Dear Chuck:

I put in a tank order to see you and I told the probation officer to call you and have you come up. I realize you have other business to attend to, but it is important that I see you as soon as you receive this letter. I am asking you to file a motion for an appeal in my case. I also want a stay of execution. This is extremely urgent and I want to see you right away. I want to discuss this with you before the statute of limitations expires. I'll expect you Tuesday sometime. I want to thank you for your effort which you put into this case, *but I'm not through fighting*

Chuck. I'll be expecting you. Play it cool!!

Respectfully yours
Boqui"

The record discloses that, following the writing of the foregoing letter and prior to sentence, petitioner personally discussed the probabilities of appeal with his counsel. At the original hearing before this Court on March 15, 1966, petitioner was asked the following questions and made the following answers:

"Q But you don't recall whether, after he had explained to you the possibilities, his ideas on a possible appeal, whether you carried the conversation any further? You don't recall?

A No.

Q And it is correct that you made no effort within the first few months, or in fact within even a year, let's say, to contact him concerning your appeal? In other words, after you left the sentencing area, your impression at the time, until sometime later, was that there was going to be no appeal, for whatever reason?

A That's correct." (Tr. 22–23)

Petitioner's counsel has no recollection of the substance of the conversations other than that no appeal was taken thereafter.

Fifteen months after sentencing, November 29, 1960, petitioner wrote the following letter to his counsel:

"Hi Chuck:

Since my arrival here at state prison, I have been saving and finally compiled what I believe to be sufficient material to delve into a task for which I have anxiously waited for. Material which I obtained from the West Publishing Company in St. Paul, Minn. and Washington, D. C.

In doing so, and since I am acting pro. se. in my initial-preparation I need some information which I understand I can get from you. And that is; a copy of the minute entry, and my Superior Court Criminal Case number. I would appreciate it very much if you would send these to me at your earliest

convenience, along with any material you might think necessary in assisting me in my preparation.

I have been here fifteen months already. Maybe the lapse of time might help in tempering the fermentation caused by a senseless idiot.

In wishing you had a very pleasant Thanksgiving and hoping you and your family are in excellent health, I remain,

Very respectfully
Bouqui"

The third paragraph of the letter is of interest in the consideration of whether or not petitioner intelligently waived his right to appeal subsequent to conviction, and at the time of sentencing.

The last alternative suggested by the Court of Appeals in its mandate directs that, if the Supreme Court of Arizona granted a hearing upon petitioner's motion, and if the decision of that Court is unfavorable to the appellant, this Court should reconsider appellant's position in the light of the views expressed by the Supreme Court of the United States in Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L.Ed.2d 770, and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. The Supreme Court of Arizona has reviewed the entire record and reached the conclusion that:

"* * * a convicted felon may acquiesce in the advice and decision of counsel not to appeal, so as to make that decision his. We will not recognize the claim that the decision of counsel in which he acquiesced deprived him of the right to counsel within the meaning of the Sixth Amendment to the Constitution of the United States so as to permit a collateral attack on the judgment of conviction by habeas corpus or to permit it to be asserted as the basis of good cause for a delayed appeal." (State of Arizona v. Montez, supra).

 In the course of these prolonged proceedings, petitioner asserts that he did not receive effective assistance of counsel. A review of the record in this case discloses that the assertion by

petitioner in this regard is without merit. Apparently petitioner is unhappy with his conviction and ultimate sentence, and he would like to blame this upon his counsel, and thus assert a violation of a constitutional right. In Brubaker v. Dickson, 310 F.2d 30, 37, the Court of Appeals for the Ninth Circuit stated:

"* * * Appellant was entitled to 'effective' aid in the preparation and trial of the case.'

This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive an accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' "

This Court has reviewed, pursuant to the request of the Court of Appeals, Townsend v. Sain, supra, and Fay v. Noia, supra. The Supreme Court of Arizona has twice considered petitioner's application. Upon its second consideration that Court reviewed the entire record. This Court has twice held evidentiary hearings upon petitioner's application, and has also reviewed the entire record in this case.

 A review of the record discloses that:

1. The merits of the factual dispute were resolved at the trial of this case, and were further resolved at the second hearing by the Supreme Court of the State of Arizona.

2. The State's factual determination is wholly supported by the record.

3. The fact finding procedure employed by the State Court was adequate to afford a full and fair hearing.

4. There is no substantial allegation of newly discovered evidence.

5. The material facts were fully and adequately developed at the State Court hearing.

6. There appears to be no reason nor facts from which it could be concluded

that the State trier of fact did not afford petitioner a full and fair fact hearing.

After two evidentiary hearings in this case, and after a review of the entire record from the commencement of the original trial, and a review of the two records before the Supreme Court of Arizona, this Court is of the opinion that the petitioner received a fair and impartial trial; that he was adequately, responsibly, and intelligently represented by competent trial counsel; that failure to appeal to the Supreme Court of Arizona was the result of a decision reached after discussions between petitioner and his counsel subsequent to the trial; that the decision of trial counsel not to appeal, in which petitioner either agreed or definitely acquiesced, was a sound one.

This Court concurs in the conclusions reached by the Supreme Court of Arizona in State of Arizona v. Montez, No. 1662, October 5, 1967, 102 Ariz. 444, 432 P.2d 456.

The application of petitioner for writ of habeas corpus is denied. Petitioner may have leave to appeal in forma pauperis.