874 So.2d 304 (2004)
STATE of Louisiana
v.
Daphne M. ARMOUR.
No. 2003-KA-1882.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 2004.
*305 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Val M. Solino, Assistant District Attorney of Orleans Parish, New Orleans, LA, for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
The defendant, Daphne Armour, appeals asserting as her sole assignment of error the trial court's imposition of an additional three year sentence pursuant to La. R.S. 14:50.2, which provides for the discretionary imposition of an additional three year sentence when the victim of certain crimes of violence is sixty-five years old or older. Ms. Armour seeks a declaration that this statute is unconstitutional and a remand for re-sentencing.[1] Finding no error, we affirm.

*306 STATEMENT OF THE CASE
On April 28, 2003, the state filed a bill of information charging Ms. Armour with one count of purse snatching, a violation of La. R.S. 14:65.1. On May 1, 2003, Ms. Armour was arraigned and pleaded not guilty. On May 12, 2003, the trial court heard and denied the defense pretrial motions to suppress. On May 19, 2003, the state filed a motion to invoke the sentencing provisions set forth in La. R.S. 14:50.2 for crimes of violence against victims aged sixty-five or older. On May 20, 2003, a six-member jury found Ms. Armour guilty as charged. On June 4, 2003, the state filed a multiple bill charging that Ms. Armour was a second offender. On July 24, 2003, the trial court denied Ms. Armour's post-verdict motions. After she waived the sentencing delays, the trial court sentenced her to serve fifteen years at hard labor and imposed an additional three years pursuant La. R.S. 14:50.2. The additional sentence was to run consecutively, making the total sentence of eighteen years at hard labor without the benefit of probation or suspension of sentence. The eighteen-year sentence was to run concurrently with any other sentence. The trial court denied her motion to reconsider sentence, but granted her motion for an appeal.
On October 8, 2003, after several continuances, Ms. Armour appeared for the multiple bill hearing and pled guilty to being a second offender. The trial court vacated the previously imposed sentence and resentenced her to serve eighteen years at hard labor, which sentence expressly included the additional three year enhancement pursuant to La. R.S. 14:50.2. This appeal followed.

STATEMENT OF THE FACTS
On February 27, 2003, at about 11:30 a.m., eighty-six year old Franceline Bordenave was preparing to eat lunch and watching a television show, "The Young and Restless." At that time, her doorbell rang several times. When she opened the door, a younger woman, later identified as Ms. Armour, greeted her and requested to use her bathroom. Although Ms. Armour informed Ms. Bordenave that she had helped her with her groceries in the past, Ms. Bordenave had no recollection of that. Nonetheless, Ms. Bordenave allowed Ms. Armour inside her house.
After Ms. Armour was through in the bathroom, she came into the kitchen where Ms. Bordenave was eating lunch. Ms. Armour requested a drink and a banana, and Ms. Bordenave complied with her requests. Ms. Armour then turned her requests from food to money. She asked for bus money, and Ms. Bordenave gave her a dollar bill. She then asked for change, but Ms. Bordenave informed her that she had no change. At that point, Ms. Armour became furious and grabbed Ms. Bordenave's purse, which was lying on the bed. Ms. Armour then emptied out the purse onto the bed. Taking a bank envelope containing forty-six dollars and Ms. Bordenave's wallet containing credit cards, Ms. Armour ran down the hall of the house. Ms. Bordenave yelled for her to return the money. Ms. Armour then knocked Ms. Bordenave down to the ground and ran from the house. Ms. Bordenave pulled herself up from the ground and walked to her front porch where she met her tenants, Doris West and Floyd Tribble. She informed them that she had been robbed.
At trial, the tenants, Ms. West and Mr. Tribble, testified that they lived next door to Ms. Bordenave in the other half of a double house at 924 North Roman Street in New Orleans. On the morning in question, *307 the tenants testified that they were watching television when they heard a noise next door. Ms. West stated that she attributed the noise to Ms. Bordenave falling. Ms. West further testified that she then heard someone running. When she looked out her window, she observed Ms. Armour running down the steps of the double house. She instructed Mr. Tribble to follow Ms. Armour while she assisted Ms. Bordenave and called 911.
Mr. Tribble followed Ms. Armour to Dumaine Street, but then lost track of her. He returned to the house to make sure that Ms. West had called the police, and he went back to Dumaine Street. Mr. Tribble walked up and down several streets until he spotted Ms. Armour near St. Ann and North Roman Streets. At that point, he ran back toward the house to alert the police. Although he never saw Ms. Armour enter or exit a store, he testified that he did see her carrying a plate of food. According to Mr. Tribble, when he was following Ms. Armour she was not running.
Officer Fayard of the New Orleans Police Department First District received a call from the dispatcher that there was unknown trouble at 924 North Roman Street. Because he happened to be nearby, he responded to the call in less than five minutes. When he arrived, he found Ms. Bordenave on her front porch. She informed him that she had been robbed. While they were talking, he saw Mr. Tribble about a block away running down the street and waving his hands as if he was trying to get their attention. Officer Fayard then drove his police car to meet him. As Officer Fayard was speaking to Mr. Tribble, he saw Ms. Armour crossing the intersection of North Roman and St. Ann Streets. She was carrying a black purse and a white plastic bag. The plastic bag contained a cooked chicken and some cigarettes that she had just purchased. Officer Fayard detained Ms. Armour, placed her into his police car, and drove back to Ms. Bordenave's house. There, Ms. Bordenave identified Ms. Armour as the woman who robbed her, and Ms. West identified her as the woman that she saw running down the steps of the double house. Likewise, both Ms. Bordenave and Ms. West positively identified Ms. Armour at trial.
Officer Fayard further testified that he asked Ms. Armour where she purchased the chicken and cigarettes and that her response was that it was from a neighborhood store. He asked her for identification and her response was that it was in her purse. When he opened her purse, he found inside of it a piece of banana and thirty-eight dollars in cash. According to Officer Fayard, Ms. Armour's recent purchase of the chicken and cigarettes explained the differential between the amount of cash that she had in her purse and the amount that was taken from Ms. Bordenave's bank envelope.[2] Officer Fayard also identified the gray sweat suit that Ms. Armour was wearing when she was arrested.
At trial, the witnesses identified several crime lab photographs of Ms. Bordenave's house, of Ms. Bordenave's clothing with banana smeared on it, of the banana inside of Ms. Armour's purse, and of the envelope with the name "Dean Campbell" written on it. As to the envelope, Ms. Bordenave explained that while Ms. Armour was in her house, she had Ms. Armour write her name down on that envelope and that Ms. Armour had written that name. Finally, Ms. Bordenave, in response to the prosecutor's question as to her current age, testified that she was eighty-seven.

*308 DISCUSSION
As noted at the outset, Ms. Armour's sole assignment of error is that the trial court erred in imposing an additional three-year sentence pursuant to La. R.S. 14:50.2, which she contends is unconstitutional. Her constitutional challenge to this statute is premised on the rule recently espoused in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Apprendi rule is that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. Ms. Armour contends that the same analysis and application of the Apprendi rule as the Louisiana Supreme Court performed in State v. Palermo, 2000-2488 (La.5/31/02), 818 So.2d 745, to find La. R.S. 14:54 unconstitutional, should be performed in this case to find La. R.S. 14:50.2 unconstitutional.[3]
Ms. Armour acknowledges that her actual sentence does not exceed the statutory maximum for the crimes she was convicted, i.e., purse snatching and habitual offender. Nonetheless, she argues that the statute violates due process because it allows the court to impose an additional three-year sentence over the statutory maximum for the underlying offense. Stated otherwise, her argument is that some other defendant may be sentenced pursuant to La. R.S. 14:50.2 to three years beyond the prescribed statutory maximum for the underlying crime. For that reason, she argues that allowing the district court to impose such an additional sentence without a specific jury finding that the victim's age was sixty-five or older at the time of the crime violates due process.
In support of her argument, Ms. Armour quotes the following reasoning from Apprendi: "when the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an `element' of the offense." Apprendi, 530 U.S. at 494, n. 19, 120 S.Ct. at 2365, n. 19. She argues that the Legislature by enacting La. R.S. 14:50.2, in essence, created "a greater degree of any non-enumerated offense when [the] victim of the offense is older than sixty five." She claims it is telling that the exceptions from La. R.S. 14:50.2 are crimes for which the Legislature has already created greater degree offenses based on the victim's age.
The state counters that Ms. Armour's constitutional challenge is procedurally improper because she did not raise this constitutional issue in the trial court. In support, the state cites State v. Williams, XXXX-XXXX, p. 7 (La.10/15/02), 830 So.2d 984, 988, for the proposition that constitutional issues are not an exception to the general rule that appellate courts will not consider issues not submitted to the trial court for decision. Alternatively, the state argues that Ms. Armour lacks standing to challenge the constitutionality of this statute because the actual sentence she received for purse snatching (and even the sentence she received as a habitual offender) did not exceed the statutory maximum *309 for the underlying crime. In support, the state cites State in Interest of A.C., 93-1125, p. 24 (La.1/27/94), 643 So.2d 719, 734, which held that "to have standing to raise a constitutional issue, there must be an `injury in fact' to the plaintiff, not the remote threat of injury to him or injury to another class of which he is not a member." Id. In the further alternative, the state argues that La. R.S. 14:50.2 does not violate Apprendi because it makes any sentence enhancement discretionary with the sentencing court and thus consideration under this statute of the fact the victim was age sixty-five or older is "the functional equivalent of a circumstance of the offense which the court is entitled to consider when tailoring a sentence appropriate to the defendant."
While we acknowledge Ms. Armour's failure to present this constitutional challenge to the trial court for decision and the fact that this failure arguably renders the constitutional issue not properly before us, we nonetheless find it appropriate to address this issue given that it presents a potential error patent.[4] As to the state's suggestion that Ms. Armour lacks standing to raise the constitutional issue, we find this suggestion overlooks the fact that Ms. Armour was exposed to a possible sentence of three years more than the statutory sentencing range for purse snatching and habitual offender. We thus find that she has standing.
In addressing this constitutional challenge, we begin by analyzing the language of the statute at issue. La. R.S. 14:50.2, which was enacted by La. Acts 2001, No. 648 and applicable to offenses committed on or after August 15, 2001, provides:
The court in its discretion may sentence, in addition to any other penalty provided by law, any person who is convicted of a crime of violence or of an attempt to commit any of the crimes as defined in R.S. 14:2(13) with the exception of first degree murder (R.S. 14:30), second degree murder (R.S. 14:30.1), aggravated assault (R.S. 14:37), aggravated rape (R.S. 14:42) and aggravated kidnapping (R.S. 14:44), to an additional three years' imprisonment when the victim of such crime is sixty-five years of age or older at the time the crime is committed.
La. R.S. 14:50.2 (Emphasis supplied). The crime in question, purse snatching, is defined as a "crime of violence" by La. R.S. 14:2(13)(z), and it is not one of the crimes specifically excluded by La. R.S. 14:50.2.
Significantly, as the state stresses, the application of this statute by the sentencing court is not mandatory; rather, it is discretionary. Another significant factor, also stressed by the state, is that the trial court did not sentence Ms. Armour to a total sentence that exceeded the underlying prescribed statutory maximum for purse snatching, which is twenty years, or under the habitual offender law, which is forty years for a second offender. We find these two factors alone dispositive of the issue presented in this case.
Our finding that La. R.S. 14:50.2 is constitutional as applied to the facts of this case is buttressed by both the procedural history of this case and by the jurisprudence declaring a similar Louisiana statute unconstitutional. In State v. Goode, 380 So.2d 1361 (La.1980), the Louisiana Supreme Court articulated two reasons for finding La. R.S. 14:50.1[5] unconstitutional; to wit:

*310 [First, t]he mandatory nature of the penalty can result in a sentence which is disproportionate to the severity of a particular crime.... Although a simple battery on an elderly person could result in serious medical and psychological consequences to the victim, the mandatory minimum sentence of five years in addition to the sentence for the underlying offense fails to meet the test of being proportionate to the offense.
Furthermore, the statute fails to prescribe a maximum sentence which the court may impose; it merely provides for a minimum of five additional years. Therefore, a defendant charged under this statute could be faced with serving up to a life sentence, in addition to the sentence for the underlying offense.
Goode, 380 So.2d at 1364. The Louisiana Supreme Court thus held that La. R.S. 14:50.1 was unconstitutional because "the nature of the penalty provided for in the statute is unusually severe when compared with some of the offenses which are included in the statute." Id.
In drafting La. R.S. 14:50.2, the Legislature attempted to cure the infirmities the Louisiana Supreme Court in Goode identified in La. R.S. 14:50.1.[6] La. R.S. 14:50.2 was enacted in 2001, after Apprendi was decided in 2000. Nonetheless, the Legislature did not limit its application to the prescribed statutory maximum for the underlying crime. This statute, as Ms. Armour argues, exposes a defendant to an additional three-year sentence beyond the statutory maximum sentence and thus presents a potential Apprendi problem. For this reason, although the Legislature structured La. R.S. 14:50.2 in the format of an "enhanced penalty" provision, this statute, based on the Apprendi rule, "must be construed as creating a new offense." Chaney C. Joseph, Jr. and P. Raymond Lamonica, 17 Louisiana Civil Law Treatise: Criminal Jury Instructions § 10.50.1 (2001 Supp.).
To avoid the Apprendi problem, a better practice, as the commentators suggest, is for the state to charge the defendant separately with a violation of La. R.S. 14:50.2 and to instruct the jury on this separate crime. Id. Doing so would require the state to prove and to instruct the jury on only one additional element; to wit: "[t]hat [name the victim] was at least 65 years of age on the date alleged in the indictment that the offense took place."
*311 Id. Despite the state's failure to follow that practice in this case, we find no Apprendi violation occurred; the sentences the trial court imposed on Ms. Armour did not exceed the statutorily prescribed maximum sentences.
The jurisprudence has recognized that when, as here, a defendant is sentenced within the prescribed statutory maximum, no Apprendi violation occurs. See State v. Walker, 2001-51, p. 10 (La.App. 5 Cir. 5/30/01), 789 So.2d 86, 91, writ denied, XXXX-XXXX (La.5/10/02), 815 So.2d 834 (finding no Apprendi violation because the defendant's penalty was not increased beyond the maximum term prescribed by the armed robbery statute); see also State v. Palermo, 2000-2488, p. 2 (La.5/31/02), 818 So.2d 745, 755 (Johnson, J., dissenting)(collecting cases)(noting that Apprendi rule applies only when "the disputed `fact' enlarges the applicable statutory maximum and the defendant's sentence exceeds the original maximum").
Nor does this case present a due process problem of failure of notice. As noted above, on the day before trial, the state filed a "Motion to Invoke Crimes of Violence Against Victims Sixty-Five Years of Age or Older Sentencing Provisions." In that motion, the state averred that the victim was eighty-six years old at the time of the crime of violence (purse snatching) that the bill of information charged Ms. Armour with committing. Thus, Ms. Armour was on notice of the state's intent to invoke La. R.S. 14:50.2. At trial, the state expressly elicited testimony from the victim, Ms. Bordenave, regarding her age. The record indicates that the defense neither objected to the jury instructions, nor requested the jury be charged on this sentencing enhancement provision.
At sentencing, the trial court stated for the record that testimony from the trial "revealed to the Court that Franceline Bordenave was eighty-six years of age on the 27th day of February, 2003 [the date of the crime]." The court noted the state's motion to invoke the sentencing provisions of crimes of violence against victims sixty-five or older and that the sentencing range for purse snatching was a minimum of two years to a maximum of twenty years. The court further noted that, pursuant to La. R.S. 14:50.2, the imposition of the additional three years was discretionary. After reviewing the provisions of La.C.Cr.P. arts. 893 and 894.1 and the multiple bill filed by the state, the trial court imposed a sentence of fifteen years, then added three years pursuant to La. R.S. 14:50.2. The total sentence was thus eighteen years, two years below the statutory maximum. Thus, we find no due process violation in the trial court's discretionary use of La. R.S. 14:50.2, as opposed to simply sentencing Ms. Armour to eighteen years without mentioning the enhancement provision.
Furthermore, at re-sentencing, following Ms. Armour's pleading guilty to the multiple bill charging her as a second offender, the trial court asked her if she understood that she would be sentenced to "eighteen years in the custody of the Louisiana Department of Corrections." The record reflects the absence of any sentencing agreement between the state and Ms. Armour in exchange for her plea to the multiple bill. However, defense counsel asked the court off the record if it "would be inclined to sentence Ms. Armour to a sentence greater than the eighteen years that was originally imposed, which was fifteen years plus an additional three years under the Elderly Victim Law. The Court indicated ... that it would not be inclined... to enhance or increase the sentence beyond the eighteen years." When the trial court formally imposed the sentence pursuant to the multiple bill, it stated that the sentence was "eighteen years in the *312 custody of the Louisiana Department of Corrections." After imposing that sentence, the court noted that the sentencing range under La. R.S. 15:529.1 was no less than ten or more than forty years. The court then noted that the offense was a crime of violence and that "[t]his sentence also includes a three year enhancement in connection with the motion to invoke crimes of violence against victims 65 years or age or older sentencing provisions."
Given the above procedural history of this case coupled with the fact the actual sentence imposed on Ms. Armour did not exceed the statutory maximum for purse snatching, we find no due process violation occurred as a result of the trial court's expressly considering the victim's advanced age in setting the sentences. In so finding, we note two relevant factors. First, the state filed a pretrial motion to invoke the sentencing enhancement provision of La. R.S. 14:50.2. Second, Ms. Armour failed to object in the trial court to her eighteen-year sentence, in general, and the constitutionality of La. R.S. 14:50.2, in particular. We thus find Ms. Armour's argument that her sentence should be vacated unpersuasive.

DECREE
For the foregoing reasons, we affirm Ms. Armour's conviction and sentence.
AFFIRMED.
NOTES
[1] ALTHOUGH Ms. Armour also seeks an error patent review, we found, in reviewing the record, that the only possible error patent is that presented by the additional three-year sentence imposed pursuant to La. R.S. 14:50.2.
[2] The cash was later photocopied and returned to Ms. Bordenave.
[3] The statute at issue in Palermo was La. R.S. 14:54, which defines the crime of placing of combustible materials as attempted arson, but which directs the trial court to La. R.S. 14:51 to 53, the arson statutes, for a determination of the appropriate sentence based on the type of arson attempted. In that case, the Louisiana Supreme Court extensively analyzed Apprendi and the related jurisprudence.
[4] As noted in footnote one, the imposition of this additional three-year sentence is the only possible error patent we found in reviewing the record in this case.
[5] La. R.S. 14:50.1 provides:

Notwithstanding any other provisions of law to the contrary, any person who is convicted of manslaughter, simple rape, forcible rape, aggravated assault, aggravated battery, aggravated kidnapping, simple kidnapping, or false imprisonment or any attempt to commit the aforementioned crimes where a victim of any such crime is sixty-five years of age or older shall in addition to any other penalty imposed, serve a minimum of five years without benefit of parole, probation or suspension of sentence and adjudication of guilt or imposition of sentence shall not be suspended, and lack of knowledge of the victim's age shall not be a defense.
Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.
La. R.S. 14:50.1. Although this statute has been declared unconstitutional, it has not been legislatively repealed. Indeed, the record reflects that when Ms. Armour was arrested she was initially also charged with violating this statute.
[6] This is evidenced by the fact that La. R.S. 14:50.2 is discretionary, not mandatory; imposes a three-year cap on the sentence enhancement, alleviating the problems presented by an open-ended sentencing provision; defines the covered crimes by borrowing the statutorily defined term "crimes of violence," which term includes purse snatchinga crime the court in Goode noted is frequently committed on the elderly; and carves out those crimes which the court in Goode stated were inconsistently included in La. R.S. 14:50.1.