115 P.3d 629

**STATE of Arizona, Respondent,**

v.

**Orlando Cain FEBLES, Petitioner.**

**No. 1 CA–CR 03–0827 PRPC.**

Court of Appeals of Arizona, Division 1, Department C.

July 5, 2005.

Andrew P. Thomas, Maricopa County Attorney By Faith C. Klepper, Deputy County Attorney, Phoenix, Attorneys for Respondent.

Orlando Cain Febles, Vista, CA, Pro Se Petitioner.

## OPINION

OROZCO, Judge.

¶ 1 In this opinion, we hold that the United States Supreme Court's opinion in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), does not apply retroactively to cases on collateral review whether such cases were final before or after *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), was decided. We also hold that defendant's appellate counsel was not ineffective for failing to raise an *Apprendi* claim on direct appeal.

## PROCEDURAL BACKGROUND

¶ 2 In August of 2000, after a jury trial, petitioner Orlando Cain Febles was convicted of one count of aggravated assault, a class three dangerous felony, and one count of burglary in the first degree, a class two dangerous felony. The trial judge sentenced him to concurrent but aggravated prison terms of fifteen years for aggravated assault

and twenty-one years for burglary. On appeal, this court affirmed the convictions and sentences. *State v. Febles*, 1 CA–CR 01–0126 (Ariz.App. Jan. 31, 2002) (mem.decision). Febles did not seek further review, and this court issued the mandate on March 21, 2002.[1]

¶ 3 In February of 2002, Febles commenced post-conviction relief proceedings. After reviewing Febles' case, appointed counsel filed a notice that he could not find any viable issues to raise. Febles then filed a pro se petition for post-conviction relief. Febles raised claims of ineffective assistance of both trial and appellate counsel. He also argued that the *Portillo*[2] instruction given at his trial was unconstitutional and that the State denied him his right to a speedy trial. The State responded and argued that Febles had presented no colorable claims.

¶ 4 Before ruling on Febles' petition, the superior court allowed Febles to file a supplemental petition. In his supplemental petition, Febles raised an *Apprendi* claim. He argued that the superior court violated his Sixth Amendment right to a jury trial when it aggravated his sentences based on facts not proven to a jury beyond a reasonable doubt. The State responded and argued that the claim was precluded. The State noted that Febles was sentenced in January of 2001, after the *Apprendi* decision. Because Febles had not raised the claim at sentencing or on direct appeal, the State argued that it was waived and urged the superior court to summarily dismiss it. In a minute entry setting forth its reasons, the superior court concluded that "Defendant has failed to present a colorable claim for post-conviction relief" and summarily dismissed the proceeding.

¶ 5 Febles then filed a motion for rehearing. He argued in part that the superior court failed to address all of his claims. Specifically, he argued that the superior court did not address his claim of ineffective assistance of appellate counsel because his attor-

---

1. *See* Ariz. R.Crim. P. 31.23(a) (directing the appellate court to issue the mandate when the time for filing any further motion or petition on direct review expires).

2. *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995) (setting forth required reasonable doubt instruction).

ney had failed to raise the *Apprendi* claim. The superior court denied the motion. The court stated:

> Defendant claims that the Court failed to address all issue[s] raised in his pro per petition. The Court disagrees.
>
> All issues not specifically addressed are denied. The Court found that the Petition was without merit. This finding, coupled with the dismissal of the Petition, implicitly, if not explicitly, denies all relief requested.

Febles timely petitioned this court for review.[3]

¶ 6 Before we considered Febles' petition for post-conviction relief, *Blakely* was decided. We granted Febles' motion to stay this matter and to remand it to the superior court to allow Febles to supplement his petition with a *Blakely* claim. Febles presented his *Blakely* claim, and the superior court summarily dismissed it. The superior court found that *Blakely* was not retroactive. Because Febles' convictions and sentences were final before *Blakely*, the superior court denied relief. We allowed Febles to supplement his petition for review. In the supplemental petition, Febles argues *Blakely* is retroactive to the date that *Apprendi* was decided and his convictions and sentences were not final at that time. As such, he argues he is entitled to relief. Because resolution of the ineffective assistance of appellate counsel claim depends in part on the resolution of whether *Blakely* is retroactive, we first address the *Blakely* claim to convictions already final on direct review.

## DISCUSSION

 ¶ 7 For the reasons stated below, we find that *Blakely* announced a new constitutionally based rule of criminal procedure that has no retroactive application.[4]

## A. Retroactivity of *Blakely*

 ¶ 8 Retroactivity is a question of law, and we review questions of law de novo. *State v. Stroud,* 209 Ariz. 410, 414, ¶ 18, 103 P.3d 912, 916 (2005). Arizona courts have adopted and followed the United States Supreme Court's retroactivity analysis. *State v. Slemmer,* 170 Ariz. 174, 181–82, 823 P.2d 41, 48–49 (1991) (deciding to adopt and to apply federal retroactivity analysis). *See also State v. Towery,* 204 Ariz. 386, 389, ¶ 6, 64 P.3d 828, 831 (2003). Generally, under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), new constitutional rules do not apply retroactively to cases after direct appeals have concluded. Determining whether a new rule applies retroactively involves a three-part analysis. *Beard v. Banks,* 542 U.S. 406, ——, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004). First, the court must determine when the petitioner's case became final. *Id.* Second, the court must "ascertain the 'legal landscape as it then existed' and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually 'new.' " *Id.* (citations omitted). Finally, the court must determine whether the new rule falls within one of two narrow exceptions described in *Teague* that permit retroactive application of a new rule of criminal procedure. *Id.*

 ¶ 9 The first step in our analysis is to determine when the defendant's conviction became final. A conviction is final when "a judgment of conviction has rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Towery,* 204 Ariz. at 389–90, ¶ 8, 64 P.3d at 831–32 (quoting *Griffith v. Kentucky,* 479 U.S.

---

**3.** Febles presents several claims in his petition for review. We only address the ineffective assistance of appellate counsel claim in this opinion because the superior court's orders denying the petition for post-conviction relief clearly identify the remaining issues. The superior court also correctly ruled upon each issue in a fashion that will allow any court in the future to understand the resolution. *State v. Whipple,* 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App.1993).

**4.** *Blakely* applies to all cases not yet final on direct review the day *Blakely* was decided, even if the defendant was sentenced before the decision. *State v. Miranda–Cabrera,* 209 Ariz. 220, 226, ¶ 26, 99 P.3d 35, 41 (App.2004); *State v. Tschilar,* 200 Ariz. 427, 432, ¶ 15, 27 P.3d 331, 336 (App.2001).

314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). This court issued the mandate in Febles' case on March 21, 2002. Thus, his case became final on that date.

¶ 10 The next step is to determine whether *Blakely* announced a new rule of criminal procedure. As noted in *Beard*, a reviewing court must determine "whether the rule later announced in [*Blakely*] was *dictated* by then-existing precedent [*Apprendi*] . . . [and] apparent to all reasonable jurists." *Beard*, 542 U.S. at ——, 124 S.Ct. at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527–28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)). If the *Blakely* rule was not dictated or compelled by *Apprendi*, and it was not apparent to all reasonable jurists, then *Blakely* is a new rule.

¶ 11 Although *Apprendi* and the cases it relied on support the Court's decision in *Blakely*, they did not dictate or compel that decision. *Blakely* extended the Court's earlier holding in *Apprendi* that other than the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. *Blakely* modified *Apprendi* when the Court declared that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537 (citations omitted). This interpretation of "statutory maximum" was neither dictated by *Apprendi* nor apparent to all reasonable jurists. For example, before *Blakely*, this court held that *Apprendi* did not apply to a sentence that did not exceed the "statutory maximum." In *State v. Brown*, 205 Ariz. 325, 70 P.3d 454 (App.2003), *vacated by* 209 Ariz. 200, 99 P.3d 15 (2004), this court held that *Apprendi* did not require a jury trial to establish aggravating factors because the use of such factors did not result in a sentence exceeding the statutory maximum. Relying on several post-*Apprendi* Arizona decisions, the court noted that "Arizona courts have found no constitutional problem when a judge's post-trial factual finding may have affected the sentence but did not expose the defendant to a sentence exceeding the prescribed statutory maximum for purposes of *Apprendi*." *Id.* at 329, ¶ 13, 70 P.3d at 458. The *Brown* court concluded that:

> Unlike *Apprendi* and *Ring II*, this case does not present a situation in which a judge-made factual finding, not found by the jury or admitted in a plea agreement, will expose the defendant to a sentence exceeding the statutory maximum. Regardless of how many aggravating circumstances the respondent judge might find under § 13–702(C), the maximum sentence McMullen could receive under § 13–702.01 would be 12.5 years, in accordance with both the applicable statutes and the plea agreement.

*Id.* at 333, ¶ 27, 70 P.3d at 462.

¶ 12 Other jurisdictions had reached the same conclusion. In fact, all federal appellate courts, and those state courts that addressed the issue, agreed that *Apprendi* did not apply to facts used to increase a sentence if they did not result in a sentence longer than the statutory maximum.[5] Thus, *Blakely*

---

5. *See, e.g., United States v. Casas*, 356 F.3d 104, 128 (1st Cir.2004); *United States v. Merritt*, 361 F.3d 1005, 1015 (7th Cir.2004), *vacated by* —— U.S. ——, 125 S.Ct. 1024, 160 L.Ed.2d 995 (2005); *United States v. Parmelee*, 319 F.3d 583, 591–92 (3d Cir.2003); *United States v. Floyd*, 343 F.3d 363, 372 (5th Cir.2003); *United States v. Banks*, 340 F.3d 683, 684–85, (8th Cir.2003); *United States v. Ortiz*, 318 F.3d 1030, 1039 (11th Cir.2003); *United States v. Pettigrew*, 346 F.3d 1139, 1148 n. 18 (D.C.Cir.2003); *United States v. Luciano*, 311 F.3d 146, 150–53 (2d Cir.2002); *United States v. Cannady*, 283 F.3d 641, 649 n. 7 (4th Cir.2002); *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir.2002); *United States v. Ochoa*, 311 F.3d 1133, 1134–36 (9th Cir.2002); *United States v. Sullivan*, 255 F.3d 1256, 1265 (10th Cir.2001); *Altman v. State*, 852 So.2d 870, 876 (Fla.Dist.Ct.App.2003); *State v. Armour*, 03–1882 (La. Ct.App. 4 Cir. 4/28/04) 874 So.2d 304, 308–09; *State v. McCoy*, 631 N.W.2d 446, 450–51 (Minn.Ct.App.2001); *State v. Freeman*, 267 Neb. 737, 677 N.W.2d 164, 175–76 (2004); *Commonwealth v. Graham*, 799 A.2d 831, 833–34 (Pa.Su-

has been described as working a sea change in the body of sentencing law. *United States v. Pree*, 408 F.3d 855, 874 (7th Cir.2005); *United States v. Boulware*, 384 F.3d 794, 812 (9th Cir.2004).

¶ 13 Additionally, the fact that four Justices dissented from the majority in *Blakely* supports our conclusion that the *Blakely* holding was not apparent to all reasonable jurists. *See Beard*, 542 U.S. at ——, 124 S.Ct. at 2512 (noting that the fact that four Justices dissented in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), was sufficient to show that the new rule announced in *Mills* was not apparent to all reasonable jurists). Having ascertained the legal landscape, we conclude that *Blakely* announced a new rule of criminal procedure.

¶ 14 The final step in the analysis is to determine whether the new rule announced in *Blakely* falls within one of the two narrow exceptions to the general rule of non-retroactivity. The *Teague* bar on retroactive application of new rules of criminal procedure has two exceptions. The first exception does not apply because it only relates to new rules that forbid punishment of certain conduct and rules that prohibit a certain category of punishment for a class of defendants because of their status offense. *Beard*, 542 U.S. at ——, 124 S.Ct. at 2513. In other words, *Blakely* did not pronounce new law that altered the range of conduct or the class of persons punished by the law or place any conduct beyond the authority of the states to proscribe. *Schriro v. Summerlin*, 542 U.S. 348, ——, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004). Rules that fall under this exception are more accurately characterized as substantive rules and generally apply retroactively. *Id.* at —— n. 4, 124 S.Ct. at 2522 n. 4; *Beard*, 542 U.S. at —— n. 3, 124 S.Ct. at 2510 n. 3. This is because such rules "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at ——, 124 S.Ct. at 2522–23 (citation omitted).

¶ 15 The second exception is for watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding. *Beard*, 542 U.S. at ——, 124 S.Ct. at 2513. "This class of rules is extremely narrow, and it is unlikely that any … ha[s] yet to emerge." *Schriro*, 542 U.S. at ——, 124 S.Ct. at 2523 (citations omitted). In fact, the Supreme Court has stated:

> We have repeatedly emphasized the limited scope of the second *Teague* exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that … are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Beard*, 542 U.S. at ——, 124 S.Ct. at 2513–14 (citations omitted).

¶ 16 "[W]atershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding … [are] clearly meant to apply only to a small core of rules requiring observance of those procedures that … are implicit in the concept of ordered liberty." *Graham v. Collins*, 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (citations omitted). We do not believe that *Blakely* falls under this extremely narrow class of rules. Like the rule of *Ring*[6] and *Apprendi*, the *Blakely* rule reallocated certain factfinding authority from the judge to the jury. Also, neither *Ring* nor *Apprendi* applied retroactively.[7] When it

---

per.Ct.2002); *State v. Gore*, 143 Wash.2d 288, 21 P.3d 262, 276–77 (2001), *overruled by State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192 (2005). *But see State v. Gould*, 271 Kan. 394, 23 P.3d 801, 814 (2001) (concluding *Apprendi* requires "any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

6. *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (holding that the *Apprendi* rule applies in capital cases).

7. *See State v. Sepulveda*, 201 Ariz. 158, 32 P.3d 1085 (App.2001) (*Apprendi* not the type of watershed rule of criminal procedure that implicates the fundamental fairness of the trial and that must be accorded retroactivity). *See also Se-*

held that *Ring* was not a "watershed rule," the *Schriro* Court noted that it could not "confidently say that judicial factfinding *seriously* diminishes accuracy." *Schriro*, 542 U.S. at ——, 124 S.Ct. at 2525. "If under *DeStefano*[8] a trial held entirely without a jury was not impermissibly inaccurate, it is hard to see how a trial in which a judge finds only aggravating factors could be." *Id.* at ——, 124 S.Ct. at 2526.

¶ 17 Thus, *Schriro* instructs that the Sixth Amendment right to have a jury find any fact that increases a sentence, as opposed to a judge finding such a fact, cannot apply retroactively. Because such a right does not so improve the accuracy of the criminal proceeding, it cannot be said to "alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir.2001) (citation omitted). Directing a jury rather than a judge to find aggravating factors does not implicate the fundamental fairness and accuracy of the criminal proceeding. Nothing in *Blakely* corrected a procedure that acutely diminished the accuracy of previously rendered sentences. *See Sepulveda v. United States*, 330 F.3d at 59–60 (noting that *Apprendi* did not correct a procedure that acutely diminished the accuracy of previously rendered sentences). Finally, we note that other courts are in agreement that *Blakely* does not ap-

ply retroactively.[9] Thus, we conclude that *Blakely* only applies to cases not yet final when the opinion was issued.

**B. Ineffective Assistance of Appellate Counsel**

¶ 18 We turn now to Febles' claim of ineffective assistance of appellate counsel. Ineffective assistance of appellate counsel is a cognizable Rule 32 claim. *State v. Herrera*, 183 Ariz. 642, 646, 905 P.2d 1377, 1381 (App. 1995). If Febles presented a colorable claim of ineffective assistance of appellate counsel, the superior court abused its discretion when it denied relief. *State v. Watton*, 164 Ariz. 323, 325, 793 P.2d 80, 82 (1990) (stating that a trial court's decision on petition for post-conviction relief reviewed for an abuse of discretion). A colorable claim of ineffective assistance of appellate counsel is a claim which, if true, might have changed the outcome. *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986). To state a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objectively reasonable standards and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of appellate counsel, the petitioner must demonstrate a reasonable probability that but for counsel's deficient performance, the

pulveda v. United States, 330 F.3d 55, 59–61 (1st Cir.2003); United States v. Brown, 305 F.3d 304, 308–09 (5th Cir.2002); United States ex rel. Perez v. Warden, FMC Rochester, 286 F.3d 1059, 1063 (8th Cir.2002); United States v. Sanchez–Cervantes, 282 F.3d 664, 667–70 (9th Cir.2002); Cannon v. Mullin, 297 F.3d 989, 994 (10th Cir. 2002); United States v. Moss, 252 F.3d 993, 997 (8th Cir.2001); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir.2001).

8. *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (per curiam) (refusing to give retroactive effect to *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), which applied the Sixth Amendment's guarantee of a jury trial to the states).

9. *See Green v. United States*, 397 F.3d 101, 103 (2d Cir.2005) (concluding neither *Blakely* nor *Booker* establishes a new rule of constitutional law that the Supreme Court has made retroactive

to cases on collateral review); *United States v. Price*, 400 F.3d 844, 845 (10th Cir.2005) (*Blakely* not subject to retroactive application on collateral review); *Cook v. United States*, 386 F.3d 949, 950 (9th Cir.2004) (noting the Supreme Court has not made *Blakely* retroactive to cases on collateral review); *In re Dean*, 375 F.3d 1287, 1290 (11th Cir.2004) (holding that *Blakely* is not applicable to cases already final); *In re Consiglio*, 128 Cal.App.4th 511, 27 Cal.Rptr.3d 167, 170 (2005) (indicating *Blakely* does not apply retroactively); *People v. Amons*, 125 Cal.App.4th 855, 22 Cal.Rptr.3d 908 (2005); *Burgal v. State*, 888 So.2d 702 (Fla.Dist.Ct.App.2004); *State v. Petschl*, 692 N.W.2d 463, 472–73 (Minn.Ct.App. 2004) (stating *Blakely* does not apply retroactively to cases on collateral review); *Arvizo–Pena v. Medellin*, No. Civ.A.1:05–CV–033C, 2005 WL 734996 (N.D.Tex. Mar.31, 2005) (holding *Blakely* does not apply retroactively); *State v. Evans*, 154 Wash.2d 438, 114 P.3d 627 (2005). *But see People v. Johnson*, No. 03CA2339, —— P.3d ——, 2005 WL 774416 (Colo.App. Apr.7, 2005) (holding *Blakely* retroactive to date *Apprendi* decided).

outcome of the appeal would have been different. *Herrera*, 183 Ariz. at 647, 905 P.2d at 1382. This test was adopted from *Strickland*, and the failure to satisfy *both* elements defeats the claim. *Id.* If a defendant fails to make a sufficient showing on either prong of the *Strickland* test, the court need not determine whether the other prong was satisfied. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

¶ 19 Appellate counsel is responsible for reviewing the trial record and for evaluating and selecting the most promising issues to present on appeal. *Herrera*, 183 Ariz. at 647, 905 P.2d at 1382. "Appellate counsel is not ineffective for selecting some issues and rejecting others. Once the issues have been narrowed and presented, appellate counsel's waiver of other possible issues binds the defendant...." *Id.* Absent any evidence that the failure to raise an issue fell below prevailing professional norms and would have changed the outcome of the appeal, the claim is not colorable. *Id.*

¶ 20 A strong presumption exists that Febles' appellate counsel provided effective assistance. *State v. Valdez*, 167 Ariz. 328, 329–30, 806 P.2d 1376, 1377–78 (1991). Febles must overcome the presumption that his counsel's conduct fell within the broad range of conduct considered reasonable. *Id.* Additional scrutiny of counsel's conduct is highly deferential, granting wide latitude to counsel's tactical choices. *State v. Nash*, 143 Ariz. 392, 398, 694 P.2d 222, 228 (1985). The matter is viewed from counsel's perspective at the time, *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, and a strategic decision to "winnow[ ] out weaker arguments on appeal and focus[ ] on" those more likely to prevail is an acceptable exercise of professional judgment. *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

¶ 21 *Apprendi* was decided on June 26, 2000. Appellate counsel filed the opening brief in Febles' direct appeal on July 17, 2001. There is no question that counsel could have raised an *Apprendi* claim. How-

ever, even if counsel had raised an *Apprendi* claim, Febles has not demonstrated, nor could he, that the outcome of the appeal would have been any different. Although Febles' sentences were aggravated, they did not exceed the statutory maximum.[10] As set forth in section A of this opinion, *Apprendi* was widely understood then to apply only if the sentence imposed exceeded the statutory maximum. In *State v. Gross*, 201 Ariz. 41, 31 P.3d 815 (App.2001), this court held that because a finding that the defendant was on release status when he committed a new felony exposed the defendant to a maximum sentence that exceeded the statutory maximum for the offense, the defendant's release status had to be submitted to the jury and proved beyond a reasonable doubt. This court explained that:

> The defendant was found guilty by a jury of committing two class 4 felonies. Those verdicts exposed the defendant, who had one prior felony conviction, to a sentencing range between 2.25 years and 7.5 [aggravated] years in prison. *See* A.R.S. § 13–702(A) (2001); A.R.S. § 13–702.01(C), (D) (2001). The additional finding by the trial court that the defendant was on release status *exposed the defendant to a maximum sentence on each count of 9.5 years in prison, which exceeded the statutory maximum for the offense.* The plain language in *Apprendi* requires that the defendant's release status be submitted to the jury and proved beyond a reasonable doubt.

*Id.* at 44, ¶ 9, 31 P.3d at 818 (emphasis added).

¶ 22 After *Gross* was decided, this court held that "the fact of drug-sale income greater than $25,000 [under A.R.S. § 13–3410(A) ] must be found by a jury beyond a reasonable doubt." *State v. Nichols*, 201 Ariz. 234, 236, ¶ 7, 33 P.3d 1172, 1174 (App.2001). That statute, we noted, "presents a classic *Apprendi* scenario; it mandates a sentence—life imprisonment—far beyond the *maximum sentencing range* for possessing dangerous drugs or marijuana for sale upon the finding

10. At the time Febles committed the offenses, the maximum sentence for a dangerous class two felony was twenty-one years and for a dangerous

class three felony, fifteen years. Ariz.Rev.Stat. ("A.R.S.") § 13–604(I) (Supp.1995).

of specific facts: annual income through illegal drug sales exceeding $25,000." *Id.* at ¶ 6. This decision again reflected our understanding that *Apprendi* only applied to a sentence that exceeded the statutory maximum.

¶ 23 In *State v. Flores*, 201 Ariz. 239, 33 P.3d 1177 (App.2001), this court addressed the question of whether *Apprendi* required a jury to determine the defendant's probation or parole status before he could be sentenced pursuant to A.R.S. § 13–604.02(A). That statute provides, in part, that a person convicted of certain felony offenses, "if committed while the person is on probation for a conviction of a felony offense or parole, ... shall be sentenced to imprisonment for not less than the presumptive sentence." A.R.S. § 13–604.02(A). This court held that because the defendant's "probationary status ... did not increase the penalty for his crime 'beyond the prescribed statutory maximum' but merely raised the crime's minimum term," *Apprendi* did not apply. *Flores*, 201 Ariz. at 241, ¶ 8, 33 P.3d at 1179 (citation omitted). This court reached the same conclusion with respect to a sentence enhanced pursuant to A.R.S. § 13–604.02(B). *State v. Cox*, 201 Ariz. 464, 469, ¶ 18, 37 P.3d 437, 442 (App.2002). *See also State v. Rodriguez*, 200 Ariz. 105, 107, ¶ 10, 23 P.3d 100, 102 (App. 2001) (concluding no *Apprendi* violation occurred when judge's presentence factual findings did not increase the statutory maximum prison sentence defendant faced).

¶ 24 Counsel's failure to predict future changes in the law, and in particular the *Blakely* decision, is not ineffective because "[c]lairvoyance is not a required attribute of effective representation." *United States v. Gonzalez–Lerma*, 71 F.3d 1537, 1541–42 (10th Cir.1995) (citations omitted). There is a difference between ignorance of controlling authority and "the failure of an attorney to foresee future developments in the law." *Id.*

at 1542. "We have rejected ineffective assistance claims where a defendant faults his former counsel ... for failing to predict future law and have warned that clairvoyance is not a required attribute of effective representation." *Bullock v. Carver*, 297 F.3d 1036, 1052 (10th Cir.2002) (citations omitted).

¶ 25 Febles has not demonstrated either that his appellate counsel was ineffective for failing to raise the *Apprendi* claim or that the outcome of his appeal would have been different had the claim been raised. Thus, his claim is not colorable, and the superior court properly denied relief.

## CONCLUSION

¶ 26 *Blakely* is a new rule of criminal procedure. Because it does not fall under either exception to the rule of non-retroactivity, it applies only to cases not yet final on direct review when it was decided.

¶ 27 Febles failed to present any evidence that appellate counsel's failure to raise an *Apprendi* claim fell below prevailing professional norms. He also failed to demonstrate that had the *Apprendi* claim been raised, the outcome of his appeal would have been different. Therefore, the superior court did not abuse its discretion when it denied relief. Accordingly, we deny the relief requested in both the original and supplemental petitions for review.

CONCURRING: G. MURRAY SNOW, Presiding Judge and PATRICK IRVINE, Judge.