IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2011-0136-PR |
| | ) | DEPARTMENT A |
| Respondent, | ) | |
| | ) | O P I N I O N |
| | ) | |
| v. | ) | |
| | ) | |
| GERARDO POBLETE, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

PETITION FOR REVIEW FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. S1100CR200500234

Honorable Robert C. Brown, Judge Pro Tempore

REVIEW GRANTED; RELIEF DENIED

Law Offices of Richard La Paglia
  By Mary Z. La Paglia                                                          Eloy
                                                        Attorneys for Petitioner

B R A M M E R, Judge.

**¶1**        Petitioner Gerardo Poblete seeks review of the trial court's order denying his petition for post-conviction relief, filed pursuant to Rule 32, Ariz. R. Crim. P. "We will not disturb a trial court's ruling on a petition for post-conviction relief absent a clear

abuse of discretion." *State v. Swoopes*, 216 Ariz. 390, ¶ 4, 166 P.3d 945, 948 (App. 2007). Poblete has not sustained his burden of establishing such abuse here.

**¶2** Pursuant to a plea agreement, Poblete was convicted of one count of attempted possession of a narcotic drug for sale. The trial court suspended the imposition of sentence and placed him on probation for a period of four years, ordering that he serve sixty days in the county jail as a condition of probation. Poblete's probation was terminated early, in September 2008. Poblete, who is a non-citizen, legal resident of the United States, later consulted an immigration attorney in 2009, and the attorney informed him that, as a result of his conviction, he was subject to deportation under 8 U.S.C.A. § 1227.

**¶3** In December 2010, Poblete initiated Rule 32 proceedings, asserting his failure to file timely his notice of post-conviction relief had not been his fault, but rather "was attributable to the ineffectiveness of his prior criminal counsel" in not informing him of the immigration consequences of his guilty plea. And, he maintained, he was entitled to relief based on the Supreme Court's decision in *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473 (2010), which he characterized as a significant change in the law for purposes of Rule 32.1(g). Poblete averred that neither the trial court[1] nor his attorney had

---

[1]On review Poblete concedes that the trial court did warn him of the possible immigration consequences of a guilty plea. Indeed, the court advised Poblete:

> I also have to advise you by rule that if you are not a citizen of the United States, pleading guilty or no contest to a crime may affect your immigration status.

2

advised him "of the immigration consequences that would result from [his] plea of guilty" and that he "would not have pled guilty" had he known of those consequences. The court denied relief, concluding that because it had advised Poblete of the possible immigration consequences of his plea he was not entitled to relief under Rule 32.2(f) and that *Padilla* was not applicable retroactively and did not constitute a significant change in the law.

¶4      In his petition for review, Poblete again maintains he could not have sought post-conviction relief timely because "he did not become aware until . . . later that this plea would result in mandatory removal from the United States" and argues *Padilla* was a significant change in the law entitling him to relief.  He contends the trial court erred in concluding otherwise.

¶5      As the trial court correctly pointed out, Poblete's petition was untimely. Therefore he is entitled to relief only on certain grounds, among them that he was "without fault" for the delay in filing his notice, and that "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence."  Ariz. R. Crim. P. 32.1(f), (g) and 32.4(a).

---

> Admitting guilt may result in your deportation even if the charge is later dismissed.  Your plea or admission of guilt could result in your deportation or removal.  Could prevent you from ever being able to get legal status in the United States or could prevent you from becoming a United States citizen.

The court then asked Poblete if he understood "these potential consequences," and Poblete responded, "Yes."

3

¶6        Poblete first claims he is entitled to relief under Rule 32.1(f) because he "was not in a position to seek post-conviction relief within [ninety] days of his conviction because he did not become aware until a few years later that this plea would result in mandatory removal from the United States." Rule 32.1(f) provides that a petitioner may request the right to file a delayed notice of post-conviction relief if his failure to file timely was "without fault on the [petitioner's] part." Relief should be granted under this rule if the trial court failed to advise the defendant of his right to seek of-right post-conviction relief or if the defendant intended to seek post-conviction relief in an of-right proceeding and had believed mistakenly his counsel had filed a timely notice or request. *See* Ariz. R. Crim. P. 32.1(f) 2007 cmt.

¶7        Poblete is not arguing he was unaware of his right to petition for post-conviction relief or of the time within which a notice of post-conviction relief must be filed or that he intended to challenge the court's decision but his attorney or someone else interfered with his timely filing of a notice as contemplated by Rule 32.1(f). *See* Ariz. R. Crim. P. 32.1(f) 2007 cmt. Indeed, the trial court informed Poblete that he had a right to seek post-conviction relief. Rather, his claim is essentially that, based on information that later came to light, he regretted having failed to challenge his conviction. Such a claim is not cognizable under Rule 32.1(f). *See* Ariz. R. Crim. P. 32.1(f) 2007 cmt.; *cf. State v. Montez,* 102 Ariz. 444, 447, 432 P.2d 456, 459 (1967) ("[A] convicted felon may acquiesce in the advice and decision of counsel not to appeal, so as to make that decision his. We will not recognize the claim that the decision of counsel in which he acquiesced deprived him of the right to counsel . . . so as . . . to permit it to be asserted as the basis of

4

good cause for a delayed appeal."); David B. Wexler & Andrew Silverman, *Representing Prison Inmates: A Primer on an Emerging Dimension of Poverty Law Practice*, 11 Ariz. L. Rev. 385, 397-400 (1969) ("Plainly . . . a defendant's decision not to appeal . . . will preclude the possibility of a subsequent delayed appeal.").

¶8 We must then consider whether Poblete is entitled to relief under Rule 32.1(g), which provides relief when there has been a "significant change in the law." "Rule 32 does not define 'a significant change in the law.' But plainly a 'change in the law' requires some transformative event, a 'clear break from the past.'" *State v. Shrum*, 220 Ariz. 115, ¶ 15, 203 P.3d 1175, 1178 (2009), *quoting State v. Slemmer*, 170 Ariz. 174, 182, 823 P.2d 41, 49 (1991).

¶9 In *Padilla,* the Supreme Court concluded "Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." ___ U.S. at ___, 130 S. Ct. at 1478. Because counsel had not so advised Padilla, the Court ruled he had established deficient performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and remanded the matter to the state court to determine whether Padilla could establish he had been prejudiced by counsel's failure to advise him of the immigration consequences of his guilty plea. *Padilla*, ___ U.S. at ___, 130 S. Ct. at 1483-84. Thus, under *Padilla*, failure to advise a client of the immigration consequences of a guilty plea constitutes deficient performance under *Strickland. Id.* at ___, 130 S. Ct. at 1483.

¶10 We agree with Poblete that *Padilla* constitutes a significant change in the law. Before *Padilla,* the law in Arizona provided that an attorney's failure to advise a

5

defendant of the immigration consequences of his or her plea was not ineffective assistance of counsel because such advice related to a "collateral" matter. *See State v. Rosas*, 183 Ariz. 421, 423, 904 P.2d 1245, 1247 (App. 1995). The majority of other states and every federal circuit that had considered the issue pre-*Padilla* followed a similar rule. *See People v. Kabre*, 905 N.Y.S.2d 887, 893-94 (Crim. Ct. 2010); *see also Miller v. State*, 11 A.3d 340, 349-51 (Md. Ct. Spec. App. 2010). Because the Supreme Court rejected this approach in *Padilla,* we conclude *Padilla* represents a significant change in the law.

¶11　　　　The question remains, however, whether this significant change in the law applies to Poblete. *See* Ariz. R. Crim. P. 32.1(g) (relief based on significant change in the law "that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence.") To answer that question, we must determine whether *Padilla* is applicable retroactively to cases, like Poblete's, that were final at the time it was decided. *State v. Towery*, 204 Ariz. 386, ¶ 8, 64 P.3d 828, 831-32 (2003) ("A defendant's case becomes final when 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.'"), *quoting Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987).

¶12　　　　New constitutional rules generally are not applicable to cases already final when the rule is announced. *See State v. Febles*, 210 Ariz. 589, ¶ 8, 115 P.3d 629, 632 (App. 2005); *see also Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to

6

cases that are still on direct review."). A rule clearly is "new" when a court expressly overturns its own precedent. *Saffle v. Parks*, 494 U.S. 484, 488 (1990). When, as in *Padilla*, the court extends existing law, however, the determination of whether the rule being announced is new is more complicated. *Id.*; *see also Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion). In *Teague*, the Supreme Court defined a new rule as a rule that "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "*dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301.

¶13 Poblete argues on review that although *Padilla* "is new and is a significant change in the law," it was "not a new basis for setting aside a conviction," and was therefore not a new rule for retroactivity purposes.[2] We disagree. We recognize that, as Poblete suggests, the *Padilla* Court applied the existing *Strickland* standard. But, although a new rule generally is not created by the application of an established rule, a new rule may be announced if "the prior decision is applied in a novel setting, thereby extending the precedent." *Stringer v. Black*, 503 U.S. 222, 228 (1992). The "new rule" principle is meant to "'validate[] reasonable, good-faith interpretations of existing precedents . . . even though they are shown to be contrary to later decisions.'" *Saffle*, 494

---

[2]We note, however, in his petition below Poblete asserted *Padilla* was "new law," although apparently in the context of the meaning of "a significant change in the law" under Rule 32.1(g). He made no separate argument about the retroactive application of *Padilla*. Neither, however, did the state; it argued *Padilla* was "[n]ot new law" because Rule 17.2(F), Ariz. R. Crim. P., was in effect when Poblete pled guilty and was sentenced and *Padilla* "merely confirm[ed] what the State of Arizona had already codified into statute."

U.S. at 488. The question then is whether a "court considering [a defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule . . . was required by the Constitution." *Id.*; *Teague*, 489 U.S. at 301. As discussed above, before *Padilla*, courts uniformly rejected claims of ineffective assistance of counsel based on counsel's failure to advise the defendant of the immigration consequences of a guilty plea.

**¶14**        Indeed, in *Padilla*, the Court noted that although it never had applied the "distinction between direct and collateral consequences," many other courts had.[3] ___ U.S. at ___, 130 S. Ct. at 1481, 1481 n.9. And, in his concurrence in *Padilla*, Justice Alito characterized the Court's decision as a "dramatic departure from precedent." *Id.* at 1488 (Alito, J., concurring). Although "the mere existence of conflicting authority does not necessarily mean a rule is new," *Williams v. Taylor*, 529 U.S. 362, 410 (2008), as to this issue, significantly more than mere conflicting authority existed in the case law. Most courts, including those in Arizona, would not have felt compelled to reach the same conclusion as did the Court in *Padilla*; instead, they would have been compelled to reach precisely the opposite conclusion. Thus, *Padilla* introduced a new rule. *See Teague*, 489 U.S. at 301.

**¶15**        *Padilla* therefore is not applicable to Poblete's case unless it falls within certain narrow exceptions established by *Teague*. *See Febles*, 210 Ariz. 589, ¶ 8, 115

---

[3]We note, however, that although the "denial of a writ of certiorari imports no expression of opinion upon the merits of the case," *United States v. Carver*, 260 U.S. 482, 490 (1923) (Holmes, J.), the Supreme Court denied certiorari in at least one case that applied the "collateral consequences" rule. *See United States v. Amador-Leal*, 276 F.3d 511 (2002), *cert. denied*, 535 U.S. 1070 (2002).

P.3d at 632. "The first exception does not apply because it only relates to new rules that forbid punishment of certain conduct and rules that prohibit a certain category of punishment for a class of defendants because of their status offense." *Id.* ¶ 14.

**¶16**		Likewise, we conclude the second *Teague* exception does not apply. That exception provides that "watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding" are applicable retroactively. *Id.* ¶ 15. This exception is extremely narrow and applies "'only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.'" *Id.*, *quoting Beard v. Banks*, 542 U.S. 406, 417 (2004). Such a rule must be "'central to an accurate determination of innocence or guilt.'" *Id.*, *quoting Beard*, 542 U.S. at 417. We cannot say the rule *Padilla* announced constitutes such a "core" rule. *See State v. Sepulveda*, 201 Ariz. 158, ¶ 6, 32 P.3d 1085, 1087 (App. 2001) (noting "second exception is construed narrowly to facilitate the finality of criminal convictions" and no new constitutional rule satisfied second exception since *Teague* decided). "The *Teague* watershed exception actually requires two showings. First, '[i]nfringement of the rule must *seriously* diminish the likelihood of obtaining an accurate conviction.' In addition, 'the rule must alter our understanding of the *bedrock procedural elements essential to the fairness of a proceeding.'" *Towery*, 204 Ariz. 386, ¶ 17, 64 P.3d at 833 (citations omitted), *quoting Tyler v. Cain*, 533 U.S. 656, 665 (2001) (alterations in *Towery*). We cannot say a violation of the rule introduced in *Padilla* would impact the accuracy of conviction, and therefore it is not a watershed rule. Thus, although a

9

significant change in the law, we agree with the trial court that *Padilla* does not apply to Poblete's case. Therefore, although we grant the petition for review, we deny relief.

/s/ J. William Brammer, Jr.
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ Joseph W. Howard
JOSEPH W. HOWARD, Chief Judge

/s/ Virginia C. Kelly
VIRGINIA C. KELLY, Judge