NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

RASHAD MARTEZ TURNER, *Petitioner*.

No. 1 CA-CR 22-0564 PRPC
FILED 4-27-2023

Petition for Review from the Superior Court in Maricopa County
No. CR2011-007880-001
The Honorable Kathleen H. Mead, Judge (retired)
The Honorable John R. Ditsworth, Judge (retired)

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Robert A. Walsh
*Counsel for Respondent*

Attorneys for Freedom Law Firm, Chandler
By Marc J. Victor
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Michael J. Brown and Judge Michael S. Catlett joined.

---

**M c M U R D I E**, Judge:

**¶1**         Rashad Martez Turner petitions this court to review the dismissal of his post-conviction relief ("PCR") petition filed under Arizona Rule of Criminal Procedure ("Rule") 33.1. We grant review but deny relief.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**         In March 2011, around 5:00 a.m., Turner was involved in a car accident. Turner, driving westbound on a two-lane street, collided with a trailer attached to a vehicle ("Car 2") traveling eastbound. Turner then collided with another car ("Car 3") driving eastbound, and Car 3's driver died because of the accident.

**¶3**         Two eyewitnesses reported they saw a vehicle traveling westbound swerve into the eastbound lane and collide with the trailer. One of the witnesses, Sullivan, was "a ways back" and could not identify the vehicle because of bad lighting. But he confirmed the westbound vehicle swerved into the eastbound lane and crashed. Car 2's driver was the other witness. He reported that while driving, a vehicle driving toward him crossed the center line and struck his trailer.

**¶4**         The police diagrammed the accident scene and documented and photographed the damage to each vehicle, areas of impact, each vehicle's location post-crash, skid marks, gouges in the road, and the area's applicable speed limit (40 miles per hour).[2] In addition, the police found several empty prescription bottles in Turner's car, and blood samples drawn from Turner revealed that he had taken multiple prescription drugs.

---

[1]    We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]    The crash-scene photographs are no longer available, and the officer who took the photographs passed away in 2020.

¶5 Officers downloaded the crash data from the vehicles and reconstructed the accident. The crash data revealed Turner's car had a "steering angle of -16 degrees five seconds prior to the deployment events." The police concluded Turner's steering wheel "would have been turning towards the left" when approaching Car 2. The data also revealed that during the five seconds before the crash, Turner had neither slowed nor applied the brakes, and his car maintained a speed of 60 miles per hour. The police concluded that Turner, driving westbound, "drove left of center and collided with the trailer" and "then continued westbound and collided with [Car 3]."

¶6 A grand jury indicted Turner on counts of manslaughter, a Class 2 dangerous felony, and endangerment, a Class 6 dangerous felony. The State amended the indictment to allege that Turner had a prior non-dangerous felony conviction (conspiracy to possess marijuana for sale), he committed the current offenses while on probation, and there were aggravating circumstances other than the prior conviction. The aggravating circumstances included that Turner's driving privileges were suspended because of a prior DUI conviction. And the State submitted the DUI conviction as evidence of Turner's "extreme indifference to the probable consequences of his actions."

¶7 Turner pled guilty to manslaughter, and in return, the State dismissed the endangerment charge and the allegations that Turner had a prior felony conviction and committed the current offense while on probation. Under the plea agreement, Turner faced between 7 and 21 years in prison. If convicted at trial, he faced a minimum sentence of 10.5 years flat on the manslaughter charge and a consecutive minimum of three years on his conspiracy prior conviction.[3] At the change-of-plea hearing, Turner admitted that at the time of the accident, he was impaired by "codeine, oxycodone and alprazolam" while driving. Because the prescription drugs impaired him, Turner drove "into oncoming traffic," hitting the victim head-on and causing his death. In December 2012, the court sentenced

---

[3] If convicted for a dangerous offense while on release, a defendant must serve no "less than the presumptive sentence . . . and is not eligible for suspension or commutation or release on any basis until the sentence imposed is served." A.R.S. § 13-708(A). The conviction also serves as a revocation of the defendant's release status and requires a consecutive sentence to be imposed. A.R.S. § 13-708(E); *see also* A.R.S. §§ 13-704(A) (dangerous offense) and -702(D) (non-dangerous offense).

Turner to an aggravated term of 18 years and reinstated probation for his prior conviction.

**¶8**         Turner filed a PCR notice in February 2013. Turner's appointed counsel reviewed the record and found no arguable issues. As a result, the court granted leave to Turner to file a *pro se* petition. Turner requested his case file and received it around November 2013. The court ultimately dismissed the case when Turner failed to petition or secure additional extensions.

**¶9**         Eventually, Turner retained counsel, and in August 2019, he hired an accident reconstruction expert. The reconstructionist visited where the crash occurred in 2011, reviewed the police reports and crash data, and interviewed Sullivan. Sullivan allegedly told the reconstructionist that Car 2's trailer bounced or swung to the left and struck the front left of Turner's car, which "forced [Turner's] car into the path of oncoming eastbound traffic." But Sullivan never provided a sworn statement to Turner's attorney. The reconstructionist completed an accident reconstruction report in May 2021.

**¶10**         The reconstructionist doubted the police's determination of the accident's point of impact. Turner's reconstructionist reported that Turner's vehicle's negative steering wheel angle meant his wheel was turned right, contrary to the police's conclusion that it was turned left. Turner's reconstructionist noted that the crash data report read:

> Steering Wheel Angle data is displayed as a positive value when the steering wheel is turned to the right and a negative value when the steering wheel is turned to the left, except for Cadillac STS model vehicles with StabiliTrak 3.0 systems (RPO JL7). For Cadillac STS model vehicles with StabiliTrak 3.0 systems (RPO JL7), when the steering wheel is turned to the right, a negative value will be displayed and when the steering wheel is turned to the left, a positive value will be displayed. The Steering Wheel Angle data is reported in 16 degree increments.

Based on this data, the reconstructionist concluded that Turner, who drove a Cadillac, could not have swerved to the left. Instead, according to the reconstructionist, Car 2's trailer caused the accident by swinging over the center line of the street and striking Turner's car. The reconstructionist also asserted that the collision damaged Turner's left front wheel and forced Turner's car into the eastbound lane.

¶11            In June 2021, Turner petitioned for PCR. Turner claimed: 1) under Rule 33.1(e), the new interview with Sullivan, the discovery that the police overlooked information about the steering wheel angle, and the 2021 accident reconstructionist's report were newly discovered material facts that probably would have changed the outcome; 2) under Rule 33.1(h), the 2021 accident reconstruction report established by clear and convincing evidence that no reasonable fact-finder would find him guilty of the offense beyond a reasonable doubt; and 3) under Rule 33.1(a), Turner's trial counsel was ineffective by failing to reconstruct the accident, interview the eyewitnesses, and discover the crash data inconsistencies in the police reports, thus rendering his guilty plea involuntary.

¶12            In response, the State conceded the police had overlooked the steering angle directions for Cadillac STS models with StabiliTrak. But the State explained other evidence showed that Turner caused the accident by traveling left of center, including the skid marks, gouges, and Turner's point of impact with Car 2's trailer in the eastbound lane. The State asserted there was also no evidence Turner tried to avoid the trailer, as he had not applied the brakes in the five seconds before the crash.

¶13            In the State's supplemental report, a police officer from the crash scene responded to the reconstructionist's findings. The report explained it was unlikely that Turner was traveling 16 degrees to the right because, at his speed, he would have "crossed over the westbound lane's right shoulder" and avoided the two vehicles altogether. The supplemental report highlighted the possibility that the steering wheel was not correctly calibrated or was inoperative. The report also noted it was unclear whether the StabiliTrak system was active during the crash event. The report concluded that the evidence at the scene and the witness statements fully proved that Turner caused the accident.

¶14            After Turner replied, the superior court dismissed the petition. The court found that Turner's claims were precluded as untimely because Turner did not file his second PCR petition until eight and a half years after his sentencing and did not explain why the delay was reasonable. The superior court alternatively dismissed each claim on its merits.

¶15            Turner petitioned this court for review. We have jurisdiction under A.R.S. § 13-4239(C) and Rule 33.16.

## DISCUSSION

**¶16** We review the superior court's ruling on a PCR petition for an abuse of discretion. *State v. Reed*, 252 Ariz. 236, 238, ¶ 6 (App. 2021). We review legal conclusions and interpretations of the Arizona Rules of Criminal Procedure *de novo*. *Id.*; *State v. Macias*, 249 Ariz. 335, 339, ¶ 8 (App. 2020). Post-conviction relief "is applied quite restrictively to overturn guilty pleas," mainly because a defendant waives all non-jurisdictional defenses by pleading guilty. *State v. Fritz*, 157 Ariz. 139, 140 (App. 1988). To be eligible for post-conviction relief, a defendant must strictly comply with the post-conviction rules. *Canion v. Cole*, 210 Ariz. 598, 600, ¶ 11 (2005).

**A. The Superior Court Did Not Abuse Its Discretion by Finding that Turner's Claims of Trial and PCR Counsel Ineffectiveness Under Rule 33.1(a) Were Precluded as Untimely.**

**¶17** Turner argues he would not have pled guilty if not for his trial counsel's ineffective assistance. He also asserts that the superior court should have excused his untimely post-conviction petition based on the ineffective assistance of his first PCR counsel. We note Turner's claims of ineffective assistance are separate claims relating to trial and PCR counsel. Both, however, are precluded.

**¶18** A defendant must file a notice for a PCR claim of ineffective assistance of trial counsel under Rule 33.1(a) within 90 days after sentencing. Ariz. R. Crim. P. 33.4(b)(3)(A); *see State v. Lopez*, 234 Ariz. 513, 515, ¶ 8 (App. 2014) (The time required to bring a claim "is not based on waiver, but instead on the defendant's timeliness in seeking relief."); *State v. Spreitz*, 202 Ariz. 1, 2, ¶ 4 (2002) (When "ineffective assistance of counsel claims . . . could have been raised[] in a [prior] Rule 32 post-conviction relief proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.").

**¶19** A pleading defendant must file a claim of ineffective assistance of post-conviction counsel "no later than 30 days after the trial court's final order in the first post-conviction proceeding." Ariz. R. Crim. P. 33.4(b)(3)(C). "The court must excuse an untimely notice . . . filed under subpart 3(A) or 3(C) if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." Ariz. R. Crim. P. 33.4(b)(3)(D).

¶20　　　　Turner petitioned for PCR in June 2021,[4] eight years after sentencing and seven years after the superior court dismissed his first PCR petition. For the court to reach the merits of the Rule 33.1(a) claims (ineffective assistance of trial and PCR counsel), Turner needed to explain adequately why the delay was not his fault. *See* Ariz. R. Crim. P. 33.4(b)(3)(A), (C), (D).

¶21　　　　A defendant is "without fault" for an untimely PCR proceeding if the defendant was unaware of his right to seek post-conviction relief or if he intended to file a post-conviction petition timely, but his attorney or someone else interfered with this opportunity. *See State v. Poblete*, 227 Ariz. 537, 539, ¶ 6 (App. 2011). Turner does not argue, and the record does not show that either circumstance exists. At sentencing, the court informed Turner of his right to seek post-conviction relief. Shortly after, Turner filed a notice and received an extension from the court to file a petition. But he did not petition for PCR. Turner had a chance to seek PCR timely but failed to do so.

¶22　　　　Turner asks this court to excuse his untimeliness because his prior counsel (trial and PCR) failed to "carry[] out sufficient investigation," and his new attorney needed time to "pick up the pieces and start over in 2019-2021." Turner does not allege that anyone interfered with his ability to seek post-conviction relief in 2013. This court will not excuse an untimely PCR petition just because the defendant claims "that, based on information that later came to light, he regretted having failed to challenge his conviction." *Poblete*, 227 Ariz. at 539–40, ¶ 7. Because Turner failed to explain adequately why he was not at fault for his untimely PCR petition, the superior court did not err by dismissing the ineffective assistance of counsel claims.

**B.　　The Superior Court Did Not Abuse Its Discretion by Finding Turner's Rule 33.1(e) and Rule 33.1(h) Claims Were Precluded as Untimely.**

¶23　　　　Unlike the 90-day requirement for raising an ineffective assistance of counsel claim under Rule 33.1(a), a defendant may file a claim of newly discovered material facts under Rule 33.1(e) or actual innocence under Rule 33.1(h) "within a reasonable time after discovering the basis for the claim." Ariz. R. Crim. P. 33.4(b)(3)(B). "[T]he passage of time alone cannot preclude relief." *Reed*, 252 Ariz. at 239, ¶ 14. To consider whether a

---

[4]　　　Turner filed an unnecessary "notice" in August 2021.

delay is reasonable, the court applies equitable principles. *Id.* It considers, "*inter alia*, the consequences of a failure to address the merits of the claim and the prejudice to the State or victim." *Id.* But the court should dismiss the notice if the notice does not sufficiently explain why the defendant did not timely file. Ariz. R. Crim. P. 33.2(b)(1).

¶24        As noted above, Turner filed this post-conviction petition eight years after his sentencing raising newly discovered material facts and actual innocence claims. During this eight-year delay, one of the investigating officers died. The remaining police officers could not locate the accident scene photographs, and witnesses could not remember events from the accident and its aftermath. When determining whether the delay was reasonable, the superior court considered the passage of time and the prejudice to the parties resulting from the diminished evidence based on the delay in raising the claims. The court found that the consequences of failing to address the petition's merits were minimal because Turner failed to present colorable claims, and the prejudice to the State and victims was substantial, given the diminished evidence. The court did not abuse its discretion by declining to find Turner filed within a reasonable time. *Reed*, 252 Ariz. at 238, ¶ 6.

¶25        Turner justifies his delay by asserting he did not have "the scientific facts and legal analysis" supporting his claims "strongly grounded" until his accident reconstructionist completed the report in 2021. He claims his prior counsels' failure to investigate the case prevented him from discovering new information about the car accident. As the superior court explained, "[t]he fact that [Turner] has now retained an accident reconstruction expert almost a decade after [he] pled guilty, on its own, is not a sufficient explanation for the delay." The court did not abuse its discretion by finding that Turner did not sufficiently explain his delay. *Reed*, 252 Ariz. at 238, ¶ 6.

¶26        Because the "reasonable time" standard instructs us to balance equitable principles, we will review the merits of Turner's Rule 33.1(e) and 33.1(h) claims to confirm that time-preclusion does not unduly prejudice him. *See Reed*, 252 Ariz. at 239, ¶ 14. As explained below, the superior court did not err by finding that Turner failed to present colorable claims of newly discovered material facts and actual innocence. Thus, Turner was not prejudiced by the court's finding that he failed to file these claims within a reasonable time.

**C.     The Superior Court Did Not Abuse Its Discretion by Finding Turner Failed to State a Colorable Claim for Relief Under Rule 33.1(e).**

¶27         Turner disputes the superior court's conclusion that he was not entitled to relief under Rule 33.1(e). A defendant can petition for PCR if "newly discovered material facts" exist and "probably would have changed the judgment or sentence." Ariz. R. Crim. P. 33.1(e). The defendant must prove by a preponderance of the evidence that "the evidence was discovered after trial although it existed before trial; that it could not have been discovered and produced at trial through reasonable diligence; that it is neither cumulative nor impeaching; that it is material; and that it probably would have changed" the outcome. *State v. Saenz*, 197 Ariz. 487, 489, ¶ 7 (App. 2000).

¶28         Turner argues that "the re-analyzed [crash data] combined with a full-on accident reconstruction report constitute new and/or newly-discovered evidence." The superior court rejected this argument because the crash data could have been discovered and produced at trial. And while Turner's accident reconstruction report did not exist at the time of the plea, the scientific data was available with reasonable diligence. The court also found the report was not material because it relied on Sullivan's unsworn statements from his interview with the reconstruction expert, inconsistent with his post-accident statements to the police.

¶29         The superior court did not abuse its discretion by finding that the information in Turner's report could have been discovered with reasonable diligence. *Saenz*, 197 Ariz. at 489, ¶ 7. Both parties recognized that in certain Cadillac models, a negative steering value means the wheel was turned right. This information was available at the time of the plea, but its potential importance was not brought to light until the accident reconstruction report. But this court has advised not to confuse a conflicting expert opinion with newly discovered material facts. *See State v. King*, 250 Ariz. 433, 442, ¶¶ 38–39 (App. 2021). Turner is not entitled to relief just because he has retained an expert who reached a different conclusion from the police report. *See id.*

¶30         The superior court also considered Sullivan's interview with the reconstruction expert, the crash data, and the new accident reconstruction report. The court found the recent interview with Sullivan was unreliable, and the court also doubted the materiality of the reconstruction report, given its reliance on unsworn testimony. Given these weaknesses, along with the other eyewitness testimony and crash evidence supporting the police report's theory that Turner caused the accident, the

court did not abuse its discretion by finding that the alleged newly discovered material facts would probably not have changed the outcome. *See Saenz*, 197 Ariz. at 489, ¶ 7.

**¶31**         The superior court did not abuse its discretion by finding that Turner failed to establish a colorable claim under Rule 33.1(e).

**D.     The Superior Court Did Not Abuse Its Discretion by Finding Turner Failed to State a Colorable Claim for Relief Under Rule 33.1(h).**

**¶32**         Turner disputes the superior court's conclusion that he was not entitled to relief under Rule 33.1(h). A defendant has a right to PCR if he shows by clear and convincing evidence that, based on the facts of the case, no reasonable juror would have found him guilty beyond a reasonable doubt. Ariz. R. Crim. P. 33.1(h).

**¶33**         Turner argues that the new reconstruction report proves he did not cause the accident. Although the reconstruction report concluded that Car 2's trailer caused the accident, other record evidence supports that Turner caused the accident—a fact admitted to by Turner at the change-of-plea hearing. Moreover, while the report may have raised a triable issue, it is far from dispositive given that two eyewitnesses saw the westbound vehicle swerve into the eastbound lane, and Turner did not apply brakes or slow down before the crash. Based on the statements and the skid marks in the eastbound lane, the police determined that the point of impact between Turner's vehicle and the trailer occurred in the eastbound lane, which supports the police's conclusion that Turner swerved. Because the record contained evidence of Turner's guilt, the superior court was within its discretion to find that a juror could still reasonably find Turner guilty. *See* Ariz. R. Crim. P. 33.1(h). Thus, the superior court did not abuse its discretion by rejecting Turner's claim for relief.

**CONCLUSION**

**¶34** The superior court did not abuse its discretion by finding that Turner untimely petitioned for post-conviction relief, did not present colorable claims, and thus was not entitled to an evidentiary hearing. Thus, we deny relief.



AMY M. WOOD • Clerk of the Court
FILED: AA