NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

STEVEN PETERSON, *Petitioner*.

No. 1 CA-CR 25-0154 PRPC

FILED 11-06-2025

Petition for Review from the Superior Court in Navajo County
No. S0900CR201900481
The Honorable Michala M. Ruechel, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Navajo County Attorney's Office, Holbrook
By Bradley W. Carlyon
*Counsel for Respondent*

Booth Law Firm, PLLC, Chandler
By Jennifer Booth
*Counsel for Petitioner*

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which
Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

**H O W E**, Judge:

¶1            Steven Peterson petitions for review from the superior court's
dismissal of his petition for post-conviction relief based on ineffective
assistance of counsel. For the following reasons, we grant review but deny
relief.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            In 2018, Peterson met 15-year-old Gwen (a pseudonym) at a
car show. Peterson's home was "[l]ess than a block" from Gwen's, and she
began to spend time there "[a]lmost every day." Gwen enjoyed going to
Peterson's home because he and his romantic partner allowed her to smoke
their vapes and to drink alcohol, which her strict grandparents did not
allow. Peterson began acting in a sexual manner toward Gwen, flirting with
her and touching her intimately. Peterson performed various sexual acts on
Gwen including group sex with his partner, sex with Gwen alone, digital
penetration, and oral sex. Gwen eventually told her grandparents and a
school counselor about these incidents, which led to a forensic interview.

¶3            A grand jury indicted Peterson on five counts of sexual
conduct with a minor and three counts of luring a minor for sexual
exploitation. The State extended an initial plea offer to Peterson allowing
him to plead guilty to two counts of luring a minor but it contained no
agreement on sentencing and required him to register as a sex offender. He
reviewed the plea briefly with counsel, signed it, and attempted to enter it
with the court. Peterson testified that he signed this first plea because "it
would be a lot easier" and he "would be able to keep [his] kids." However,
Peterson's partner was unwilling to plead, and the State withdrew the offer,
reasoning that "they were both involved in the crimes that were committed,
[so] the incentive . . . to avoid trial by non-trial resolution has been
eliminated given [Peterson's partner's] desire to move forward to trial."

¶4            Over a year later, in January 2021, the State extended a
second, formal, plea offer to Peterson. This offer allowed him to plead guilty

to one count of sexual conduct with a minor, a class six felony, and stipulated that he would be placed on probation but required to register as a sex offender. Defense counsel avowed that he had discussed the agreement with Peterson, who "indicated he would not sign . . . because he did not want to register as a sex offender" and "he believed that the victim would not testify." Peterson testified that, despite telling counsel he wanted a second plea and would accept a probation offer, his counsel did not discuss this offer with him. In March 2021, the State extended and revoked a third informal offer via email and then invited Peterson to submit plea proposals.[1]

¶5        After failing to reach an agreement, Peterson proceeded to trial. The jury found Peterson guilty as charged. The court sentenced him to a total of seven years' imprisonment with credit for 32 days of pre-sentence incarceration and lifetime probation upon his release.

¶6        On appeal, Peterson's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969), advising this Court that she found no arguable questions of law and asking us to search the record for fundamental error. *State v. Peterson*, 1 CA-CR 22-0352, 2023 WL 2250774, at *1 ¶ 1 (Ariz. App. Feb. 28, 2023) (mem. decision). Although Peterson was given the opportunity to file a supplemental brief in propria persona, he did not. *Id.* After review, this Court affirmed Peterson's convictions and sentences. *Id.*

¶7        Over two years later, Peterson petitioned for post-conviction relief under Arizona Rule of Criminal Procedure ("Rule") 32.1(a). He alleged that trial counsel was ineffective in not relaying the second plea offer to him. The State acknowledged that Peterson "raised a colorable claim warranting an evidentiary hearing." *See* Ariz. R. Crim. P. 32.13(a). The superior court held an evidentiary hearing at which Peterson and his trial counsel testified. Peterson testified that his counsel never mentioned nor provided him a copy of the second plea offer stipulating to a sentence of probation. He also testified that he told counsel that he "would accept a probation stipulation plea."

¶8        Defense counsel testified that he advised Peterson early on "[t]his was an awful case to bring in front of a jury" and that, while Peterson could choose whether to proceed to trial, he recommended accepting a plea. Counsel recalled receiving an email from the State offering the second plea

---

[1] Peterson's claims here are limited to the second plea offer, so we decline to address the March communications.

because the victim and her grandparents were "upset about how long this case has been taking to resolve" and "[t]he victim is becoming increasingly apathetic." He explained that, after receiving the second plea, he called Peterson and "read him what he'd be pleading to, what the stipulation was as to sentencing and that he would have to register as a sex offender." Counsel testified:

> I told him we had a plea, and he said, I don't want it. I'm not going to plea and then went into why he would not plea and stated the victim won't testify, registering as a sex offender will — job opportunities will become less but that she won't testify. And I had to tell him, well, I'm obligated to tell you what the plea is. Let me tell you what it is, and I did, as far as what he was pleading to, what the stipulation to sentence and that he would have to register. He said he wasn't going to take it. I would say the conversation was 15 minutes. He wasn't going to take the plea. I asked him to consider it, but this plea won't stay on the table forever. . . . I tried to impress upon him to keep his options open and that this was a win. This was a gift. He needed to take it.

Counsel elaborated that, in the year between the first and second plea, Peterson was convinced that the victim would not testify. Further, counsel testified that he suspected that Peterson was more open to the first plea in part because it might have benefited his ongoing dependency action. But counsel believed that by the second plea in 2021, Peterson's parental rights had been terminated and he had thus "bec[o]me more defiant in his . . . position." Counsel also testified that he remembered the conversation with Peterson "distinctly" because his father was in hospice at the time, so he was in Phoenix in his childhood bedroom when he spoke with Peterson. He also recalled that Peterson asked, "what can I do for your dad?," which "struck" counsel as atypical. Counsel further testified that he felt the offer was a victory and "was greatly disappointed when Mr. Peterson indicated he wouldn't take the plea."

¶9            The court weighed the testimony and concluded that counsel's testimony was more credible than Peterson's for several reasons. The court found that "[t]he significance" of counsel's memory of being in his childhood home "lends credibility to [his] testimony." The court also found that "[t]rial counsel's testimony that [Peterson] had become 'dug in' on the idea that the Victim would not testify is also supported by [Peterson's] admission that he knew the Victim was engaging in self-harm." And the court reasoned that "[w]hile an attorney might have a motive to

deny ineffectiveness, trial counsel testified that he is now retired and living in a different state" and thus his "motive to fabricate is significantly less than [Peterson's] motive under the circumstances." The court ruled that Peterson failed to prove his counsel was ineffective and denied his petition.

¶10 Peterson petitioned for review of the court's dismissal and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. § 13-4239(C), and Rule 32.16.

## DISCUSSION

¶11 Absent an abuse of discretion or error of law, this Court will not disturb a superior court's ruling on a petition for post-conviction relief. *State v. Gutierrez*, 229 Ariz. 573, 577 ¶ 19 (2012). The petitioner bears the burden to show that the superior court abused its discretion by denying the petition for post-conviction relief. *See State v. Poblete*, 227 Ariz. 537, 538 ¶ 1 (App. 2011). We will affirm the superior court's ruling if "legally correct for any reason." *See State v. Perez*, 141 Ariz. 459, 464 (1984).

¶12 Peterson argues that counsel was ineffective for failing to sufficiently communicate the second plea offer. To state a claim of ineffective assistance of counsel, Peterson must prove that his counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim." *State v. Bennett*, 213 Ariz. 562, 567 ¶ 21 (2006). "To establish deficient performance during plea negotiations, a petitioner must prove that the lawyer either (1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea." *State v. Donald*, 198 Ariz. 406, 413 ¶ 16 (App. 2000). A "strong presumption" exists "that counsel's conduct falls within the wide range of reasonable professional assistance" and thus "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

¶13 On petition to this Court, Peterson abandons his claim that counsel wholly failed to communicate the plea offer. He acknowledges that defense counsel "attempted to communicate the plea" but now claims that "the explanation was insufficient given [his] fixation on other aspects of the case, lack of understanding, and apparent lack of ability to listen during phone conversations." Thus, he argues that counsel should have taken additional measures, such as mailing or emailing the offer to him. Although no general right to a plea agreement exists, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in

considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). "The explanation must suffice to permit the defendant to make a reasonably informed decision whether to accept or reject a plea offer." *Donald*, 198 Ariz. at 411 ¶ 9. "To ensure that a defendant is adequately advised, defense counsel has a duty to communicate not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial." *Id.* (cleaned up).

**¶14**     Peterson fails to prove his counsel's actions were deficient. *See Strickland*, 466 U.S. at 687; *Donald*, 198 Ariz. at 413 ¶ 16. True, counsel could have mailed or emailed the offer to encourage Peterson to consider the plea after he rejected it the first time. But the evidence showed that counsel sufficiently "communicate[d]" the terms and merits of the offer and was not *required* to do more. *See Donald,* 198 Ariz. at 411 ¶ 9. Counsel testified that he communicated the offer, the potential sentence, and that Peterson would have to register as a sex offender. Further, counsel "impress[ed] upon" him that the offer was a beneficial one that he should consider accepting. Both Peterson and his counsel testified that counsel repeatedly told Peterson this was "not a case that [he] could win at trial." And "[w]e defer to the PCR court's credibility evaluations of witnesses who testified at the PCR hearing." *State v. King*, 250 Ariz. 433, 439 ¶ 21 (App. 2021). Peterson fails to establish deficient performance and thus we need not address prejudice. *See Bennett*, 213 Ariz. at 567 ¶ 21. The superior court did not err.

## CONCLUSION

**¶15**     For these reasons, we accept review but deny relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR