NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

KRISTI MEGAN WILLIAMS, *Petitioner*.

No. 1 CA-CR 25-0285 PRPC

FILED 02-06-2026

Petition for Review from the Superior Court in Mohave County
No. S8015CR202101029
The Honorable Douglas Camacho, Judge *Pro Tempore*

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Leah Nelson
*Counsel for Respondent*

Janelle A. Mc Eachern Attorney at Law, Chandler
By Janelle A. Mc Eachern
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass, Judge Anni Hill Foster, and Chief Judge Randall M. Howe delivered the decision of the Court.

---

PER CURIAM:

**¶1**  Petitioner Kristi Megan Williams seeks review of the superior court's order denying her petition for post-conviction relief under Rule 32, Arizona Rules of Criminal Procedure. This matter is petitioner's first petition.

**¶2**  In her petition, Williams raised several issues, including arguing the superior court should have excluded her statements to police officers for 2 reasons: (1) because they were involuntary and (2) because she made them after she invoked her rights under *State v. Miranda*, 384 U.S. 436 (1966). The superior court summarily denied her requested relief on the voluntariness argument, but ordered an evidentiary hearing on the *Miranda* issue. Even so, during the evidentiary hearing Williams offered evidence about the voluntariness issue, which the superior court addressed in its post-hearing ruling.

**¶3**  In her petition before the court, Williams challenges the superior court's voluntariness ruling, but she relies on the evidence produced in the *Miranda* hearing. Based on Williams's petition and the record, the court grants review, but denies relief.

## FACTUAL AND PROCEDURAL HISTORY

**¶4**  The facts underlying Williams's convictions are convoluted and unusual. As discussed below, the court previously granted Williams some relief in her direct appeal in *State v. Williams*, 1 CA-CR 22-0388, 2023 WL 5371366, at *1 (App. Aug. 22, 2023) (mem. decision). That case lays out the factual background underlying her convictions, and the court will not repeat the facts unless necessary to understand the issues here.

**I.**  **Late one night, Williams found herself at a suicide scene on the side of the road in a remote area in Lake Havasu.**

**¶5**  The court views the facts and all reasonable inferences in the light most favorable to affirming the superior court's ruling. *See State v.*

*Reed*, 252 Ariz. 236, 237 n.2 (App. 2021) (applying principle to appellate review of post-conviction relief proceedings).

¶6            Williams was driving a Dodge Challenger in a remote area in Lake Havasu when she picked up a hitchhiker who was on crutches. At one point, she pulled to the side of the road so they could smoke marijuana. After smoking, Williams noticed the Challenger was stuck, leaving them stranded. After a while, she went looking for help and came across a suicide scene. The hitchhiker came along later, at which point Williams showed him the truck and then the body.

¶7            Rather than going to the police, Williams took the deceased's truck and trailer (including the tools in the trailer) and drove to a friend's house, where she stayed for several hours before her friend drove her back to the scene. Williams and her friend left the deceased's truck and trailer (including the tools) parked near the friend's house. The hitchhiker did not leave the scene with Williams and later called the police.

¶8            Williams talked to several officers near the scene. During the conversations, her story evolved because she wanted to make sure the police would not tie her to the methamphetamine pipe in the Challenger she was driving earlier. She eventually admitted to taking the deceased's truck and trailer after finding his body. The police also determined someone reported the Challenger Williams had been driving as stolen.

¶9            A grand jury indicted Williams on 2 counts of theft of a means of transportation, class 3 felonies (counts 1 & 2), 1 count of theft (value over $4000), a class 3 felony (count 3), and 1 count of false reporting to a law enforcement agency, a class 1 misdemeanor (count 4). After trial, a jury convicted Williams of 1 count of theft of means of transportation and 1 count of theft of property (the tools) with a value between $1,000 and $2,000. The superior court found her guilty of 1 count of misdemeanor false reporting to a law enforcement agency. Williams's criminal history resulted in the court classifying her as a category 3 offender. The superior court thus sentenced her to 18 years in prison for the theft of means count, a concurrent sentence of 4 years in prison for the theft of property (the tools) count, and time served for the misdemeanor false reporting to a law enforcement agency.

¶10           On appeal, the State conceded the superior court should have merged the convictions for theft of means and for theft of property (the tools). The superior court merged the 2 convictions, affirmed the sentence for theft of means, but vacated the sentence for theft of property.

¶11            Williams then began this post-conviction relief process.

II.    **Williams raised 4 issues in her petition for post-conviction relief before the superior court, only 1 of which she pursues here.**

¶12            Williams sought relief on these grounds:

1.  The addendum to the indictment contained errors.

2.  The superior court violated her confrontation clause rights because the State never called the hitchhiker as a witness, but the police still testified about some of his statements to them.

3.  Her confessions were involuntary because the police coerced her into admitting she drove the deceased's truck and trailer.

4.  Her confessions were involuntary because she made them after she invoked her *Miranda* rights.

¶13            After a response and reply, the superior court denied Williams's petition on the first 3 issues. The superior court found it could not resolve the fourth, the *Miranda* issue, based on the evidence presented at trial so it ordered an evidentiary hearing on the *Miranda* issue.

¶14            In its ruling, the superior court noted *Williams* seemed to suggest the State engaged in prosecutorial misconduct and her trial counsel's performance was ineffective because trial counsel did not pursue the claims sooner. But the superior court ruled the record did not support those claims. Williams's petition before this court does not mention prosecutorial misconduct or ineffective assistance of counsel.

III.    **After an evidentiary hearing, the superior court denied Williams's requested relief.**

¶15            The superior court held a 2-hour evidentiary hearing on whether the police continued questioning her after she invoked her *Miranda* rights. Williams and 2 of the investigating officers testified.

¶16            Williams said she believed the police gave her *Miranda* rights twice, and she said she invoked her right to remain silent at least once. She said several things affected her mental state that night which resulted in her unclear memory of the events. First, she was scared that night. Second, at her friend's house, she consumed ½ a bottle of vodka and smoked both marijuana and methamphetamine. She also said she was hallucinating when she spoke to the police. Still, in the police body camera footage, she

appeared coherent and said all she had consumed was some alcohol. She also answered basic questions correctly.

¶17　　　　Despite her alleged incapacitated condition, Williams said she understood she was under arrest for theft of the truck and trailer. Though she was unsure who explained her *Miranda* rights, she claims to have invoked her right to remain silent after the interrogating officer at the police station said he planned to talk to her about a potential homicide, referring to the suicide victim. But the recordings of the police station interrogation contradict her testimony.

¶18　　　　Williams testified about several reasons she thought she had to talk to police to prevent them from charging her with homicide. The reasons included knowing her fingerprints were at the scene, feeling morally obligated to tell the police what she knew, and having had sex with her friend so he would drive her to the police station. The police did not create any of these reasons.

¶19　　　　In contrast, the officer who spoke with Williams at the scene said he and Williams met at around 2:00 a.m. He did not know if another officer explained *Miranda* rights to Williams at the scene. Though Williams was disheveled, she was coherent and did not appear to be drunk or high. And he said Williams never mentioned an alibi.

¶20　　　　The officer who spoke to Williams at the police station said he explained Williams's *Miranda* rights to her before the interview. He said homicide only came up once towards the end of the conversation, and he did not threaten Williams with any homicide prosecution. He also said Williams did not invoke her right to an attorney.

¶21　　　　The recordings in evidence are consistent with the officers' testimony.

## IV.　The superior court made extensive findings at the end of the evidentiary hearing.

¶22　　　　The superior court acknowledged Williams presented evidence showing her confession was involuntary because the police coerced her to confess. The superior court said that evidence did not cause it to reconsider its earlier denial of her claim. The superior court then addressed whether Williams made any of her statements in violation of *Miranda*.

**¶23** As to the right to counsel, the superior court said if it accepted Williams's testimony as true, she invoked her right to an attorney. As to the right to remain silent, the superior court said based on her testimony, she left the "implication that she may have invoked her right to remain silent." The superior court also discussed several exhibits showing Williams received her *Miranda* rights. The superior court recognized Williams said she invoked her rights when a specific officer was present.

**¶24** But the officers' testimony and the video evidence did not support Williams's testimony. The officers were wearing active body cameras, and the officer recorded her police station interview. The superior court said it reviewed about 4 hours of body camera footage and the police station interview and said at no point did Williams invoke her right to remain silent or to an attorney. The superior court then said, "I find that the defendant has failed to show that there was any invocation of her right to remain silent or of her right to have an attorney present during questioning." The superior court also said, "I did not see the officers interrogate the defendant or ask questions of the defendant after she had been taken into custody at least while on the scene or being transported to the police station . . . ."

**¶25** The court accepts review and has jurisdiction under A.R.S. § 13-4239.C and Rule 32.16, Arizona Rules of Criminal Procedure.

## DISCUSSION

**¶26** Under Rule 32.13(d), Arizona Rules of Criminal Procedure, the superior court must "make specific findings of fact and . . . state expressly its conclusions of law relating to each issue presented." *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 3 (2017) (quoting *State v. Tankersley*, 211 Ariz. 323, 324 (2005)) (interpreting then Rule 32.8, which has been renumbered as Rule 32.13). To prevail, Williams must show the superior court abused its discretion when it denied her petition. *See State v. Poblete*, 227 Ariz. 537, 538 ¶ 1 (App. 2011) (placing burden of establishing abuse of discretion on review on the petitioner). Absent an abuse of discretion or error of law, the court will not disturb a superior court's ruling on a petition for post-conviction relief. *State v. Gutierrez*, 229 Ariz. 573, 577 ¶ 19 (2012). Because the superior court held an evidentiary hearing on Williams's petition for post-conviction relief, the court reviews the superior court's factual findings for clear error. *Pandeli*, 242 Ariz. at 180 ¶ 3 (citing *State v. Cuffle*, 171 Ariz. 49, 51 (1992)).

¶27          The court reviewed the record, including Williams's petition for post-conviction relief, the State's response, Williams's reply, the transcript of the superior court hearing on Williams's petition, the exhibits, and the superior court's order denying the petition for post-conviction relief.

¶28          Based on the court's review, Williams has not established the superior court abused its discretion. Her petition points to no alleged factual error. Her summary of her argument says it all:

> At the evidentiary hearing, [Williams's] recall was not much better and the Trial Court relied on the body camera footage of one of the officers, Officer Donahue, as well as the videotaped interview between Petitioner and Det. Levine. In neither footage is there an apparent[] invocation on Petitioner's part, however, her statement[s] were not voluntary based on the fact of her confused mental state, basic lack of understanding of the circumstances, and the desperate circumstances in which she found herself. Based on the above, this Court should rema[nd] this matter to the Trial Court with a finding that [Williams's] statements were not voluntary.

¶29          As to the evidence Williams offered on voluntariness, the superior court said:

> The court entered an order regarding the claim that the confession was coerced or that the statements were not voluntarily made by the defendant, and the court does recognize that evidence was presented on this issue, which I had already ruled on.

> Nothing that was presented today convinces the court that it erred or made the wrong decision regarding the voluntariness of the statements that were made, and so I am re-affirming the order previously denying relief on the issue of whether the statements were taken in violation of the Fifth [] and 14th Amendment due to involuntariness.

¶30          The superior court thus made "specific findings of fact and . . . state[d] expressly its conclusions of law relating to each issue presented." *Pandeli*, 242 Ariz. at 180 ¶ 3 (quoting *Tankersley*, 211 Ariz. at 324). And Williams did not show the superior court abused its discretion when it denied her petition. *See Poblete*, 227 Ariz. at 538 ¶ 1.

## CONCLUSION

¶31 The court affirms.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR